STEPHEN ABBOTT & *al. versus* PHINEAS WOOD.

If a statute be both penal and remedial, it should be construed strictly.

In an action brought to recover double the value of fence built by one occupant for the other on account of his neglect, under the provisions of St. 1821, c. 44, § 2, the plaintiff cannot, on the trial, give parol evidence of the contents of the writing given by the fence viewers to the defendant, directing him to repair or rebuild his part of the fence, without having given the regular previous notice to produce it.

An action founded on St. 1821, c. 44, § 2, to recover double the value of fence built by order of the fence viewers cannot be sustained, unless the fence viewers adjudge that the fence, built by the plaintiff, is sufficient, and give notice thereof, and of the value of the fence, as ascertained by them, to the occupant so neglecting to repair or rebuild.

EXCEPTIONS from the Western District Court, GOODENOW J. presiding.

This was an action under the statute for regulating fences, in which the plaintiffs claim to recover double the expense of "amending, surveying and viewing the partition fence between the adjoining lands of the parties." It was admitted, that the parties were owners and occupiers of adjoining lands, and improved the same; and to prove that there had been a division of the partition fence between them, the plaintiffs offered in evidence, the records of the town of Rumford, upon which was found the following. "Whereas a dispute has arisen between John Manson and Stephen Abbott of Rumford and Phineas Wood of said Rumford, about their respective rights in and obligation to maintain a partition fence in the line between their several lands at Rumford, and whereas we the subscribers, fence viewers of the town of Rumford, upon application to us by said Manson and Abbott, gave due notice to each of said parties to attend, if they saw cause, at the time and place when and where assignment should be made; therefore by virtue of the statute in such cases provided, and after having viewed the premises and duly considered the matter in dispute, we have assigned and do hereby assign to each of said parties his share of said fence as follows, to wit, the said Phineas Wood shall build and keep in repair a legal and sufficient fence, from the northeast corner of a lot of land owned

by said Manson and Abbott, No. 14; thence southwardly sixty-three rods and eleven links to the southeast corner of said lot, thence in the northerly line of said lot seven rods to a stake and stones; and the said Manson and Abbott build and keep in good repair a like fence on the other part of said line, to wit, from the aforesaid stake and stones on said southwardly line eighty-one rods and eight links to the corner of a lot of land owned by David Abbott, 2d; and the space of thirty days is hereby assigned to each party for the erection of their several parts of said fence. Given under our hands at Rumford this eighth day of April, 1839.

"Colman Godwin, ⎫ Fence Viewers
"Henry Martin,  ⎭ of Rumford."

"A true copy. Attest, Charles A. Kimball, Town Clerk."

The counsel for the defendant objected to the admission of the record, and contended, that it was so defective upon the face of it, that said assignment did not make a legal partition of said fence, and that said Wood was not bound by said assignment to build and maintain the fence, on the part so set out to him. But it being proved that said Wood was present, when said assignment was made, and did choose to take that part so set out to him, the Judge ruled, that if the jury believed such was the fact, the assignment was legal and sufficient.

Colman Godwin testified, that said Wood was present when said assignment was made, and that he gave a copy of it to each of the parties, and one to the town clerk; that Wood chose the part assigned to him. This was in April, A. D. 1839. He further testified, that about August 13, 1840, complaint was made to him and Joshua T. Hall, they being the fence viewers for said town of Rumford for that year, that said Wood's part of said fence was not in good repair, and they were requested to go and survey the same, which they did; that they adjudged said fence to be insufficient, on said Wood's part, and the fence of the plaintiffs to be good and sufficient; and that said Wood was notified and present at this time. They made and signed a writing and gave it to said Wood, certifying that his part of said fence was insufficient, and that

the plaintiffs' part was good and sufficient; that they had been called upon to view said fence, and that they gave him ten days to build and repair the same, and if he did not do it, they should direct the plaintiffs to do it.   The defendant objected to testimony of said Godwin relating to the contents of said writing, as they had given the defendant no notice to produce the same.   The Judge admitted it.   Godwin further testified that they did not describe in said writing, where said fence was, or in what part it was out of repair; that after said ten days had expired, he and said Hall went and examined said fence again of their own accord, and found it had not been repaired; that after the plaintiffs had completed said fence, he and said Hall went and viewed the same, and adjudged it to be sufficient, but not in writing.   The defendant objected to the admission of this testimony but the Judge admitted it.   He testified that Wood was present, and tried said fence by jumping on to the rails, he being a heavy man ; that they did not state to him, that they had so adjudged, but did tell him they had appraised the value of it at nineteen dollars, and their own expenses at seven dollars ; that they made a writing at that time and gave the same to the plaintiffs, but did not show it to the defendant.   The writing was produced by the plaintiffs, and put into the case, and was as follows. —" Rumford, Aug. 26, 1840. We Colman Godwin and Joshua T. Hall, fence viewers for the town of Rumford, called upon by Stephen Abbott and John Manson, to appraise a piece of fence between their land and Phineas Wood's, built by John Manson and Stephen Abbott, we appraise what has been built and repaired worth nineteen dollars ; likewise our expense seven dollars.

> " Colman Godwin, ⎰ Fence Viewers
> " Joshua T. Hall, ⎱  of Rumford."

" You have a right to call on Mr. Wood for thirty-eight dollars and seven dollars."

Said Goodwin testified, that they made said appraisal the next day after said fence was completed ; that the seven dollars for their expenses was made up as follows, one dollar for dividing the fence in 1839, and two dollars, being one dollar

for each of their views of said fence in 1840, being three in number, including the one when they went of their own accord; and also that they communicated nothing more to the defendant than what appeared in said writing.

A witness testified that said Godwin, Hall and Henry Martin beforementioned were freeholders, to which testimony the defendant objected, contending that such fact, if true, should appear by the records of the town, or be recited in the adjudication and doings of said fence viewers; but the Judge admitted it to be proved by parol. It appeared by town records that they were chosen fence viewers and duly sworn. The plaintiffs made demand for this claim of Wood, in August, 1840, and shewed him the writing, dated Aug. 26, 1840.

The counsel for the defendant requested the Court to instruct the jury, that upon the foregoing evidence, this action could not be maintained. But the presiding Judge declined so to instruct them. The verdict was for the plaintiffs for the sum of $56,78, and the defendant filed exceptions.

*May*, for the defendant, said that the plaintiffs must bring themselves within the provisions of the statute, or the action could not be maintained. *Rust* v. *Low*, 6 Mass. R. 90; *Little* v. *Lothrop*, 5 Greenl. 356. It is also an action for a penalty, and the statute which gives it must be construed strictly. It must be shown that every step was taken, which the statute requires, or there can be no recovery, as no agreement of parties, or prescription, has been shown.

There was no legal division of the fence. It does not appear, that there was any dispute between adverse owners, or that legal notice was given, or that there was an equal division of the fence. It does not appear by record, as it should, that the fence viewers were freeholders. Stat. 1821, c. 44; 13 Maine R. 423; 8 Greenl. 271; 11 Pick. 441; 6 Mass. R. 641.

But if the original assignment had been legal, the after proceedings were insufficient and void. There was no adjudication that the fence was insufficient; the time, too, was longer than the statute allows; it does not appear when the fence was built, or that the fence viewers adjudged it to be sufficient; or

Abbott *v.* Wood.

that the amount was ascertained in writing; or that the defendant had notice. 8 Greenl. 81; 15 Pick. 123; 14 Pick. 276. Nor does it appear, but that the valuation of the fence viewers included the whole fence, the plaintiffs' share, as well as the defendant's.

Parol evidence of the contents of the paper was improperly admitted. 2 Stark. Ev. 975; 1 Metc. 440; Colm. 33.

*Howard,* for the plaintiffs, contended, that it did appear, that there was a dispute between the parties about the fence.

Equal halves, in the statute, means a just and equal division of the fence, having reference to the expense of building and keeping in repair. The statute cannot be construed to mean a division of equal length of line. This would often cause great inequality and injustice.

The defendant had notice of the adjudication, and that is all the statute requires. The case shows, that he was actually there, and tried the fence himself. *Prescott* v. *Mudgett,* 13 Maine R. 423.

The case shows, too, that these men were actually chosen and sworn as fence viewers. But if it did not, such proof is not required. They acted as such, and they are public officers. The question whether they were legally chosen and sworn, cannot be tried out collaterally in this manner. They will be presumed to be so. *Fowler* v. *Bebee,* 9 Mass. R. 231; *Nason* v. *Dillingham,* 15 Mass. R. 170; *Bucknam* v. *Ruggles,* ib. 180; 7 Johns. R. 549; 2 Ld. Raym. 668.

They have described themselves as fence viewers, and the law requires that fence viewers should be freeholders. This is enough. But it was proved, that they were freeholders.

If the fence viewers allowed the defendant a longer time than they were required to do, he cannot complain of what was for his benefit; and the plaintiffs do not.

Whether the demand was sufficient, or not, it is unnecessary to inquire, for the defendant waived all objections of that kind by refusing to pay on other grounds.

The paper in question was not one of the papers, where

the opposite party is to be previously served with a notice to produce it, as a prerequisite to giving notice of its contents, when in possession of the other party and withheld by him, under rule 20, of the District Court. This is not a private paper of his own, but a public one.

The opinion of the Court, SHEPLEY J. taking no part in the decision, not having been present at the argument, was drawn up by

TENNEY J. — To the maintenance of this action several objections have been urged, upon the evidence introduced and relied upon in its support. It is founded upon chapter 44 of the statutes of 1821 ; and being for a penalty as well as remedial, the statute must be strictly construed. Without considering all the points presented, we are satisfied, that the proof in two respects has failed of being such as the law requires.

Assuming the fact to be true, that a proper division of the line between the parties existed, and that each was bound to keep up a good and sufficient fence on their respective portions, we are to inquire, whether the proceedings on which the plaintiffs' claim is founded were correct. It is provided in the second section of the chapter referred to, that "in case either party shall neglect and refuse to repair or rebuild the fence, which of right he ought to maintain, the aggrieved party may forthwith apply to two or more fence viewers of such town, duly chosen and sworn, to survey the same ; and upon their determination, that the fence is insufficient, they shall signify the same in writing to the occupant of the land, and direct him to repair or rebuild the same within six days." The fence viewers of the town of Rumford, where the parties lived, and where the land was situated, were applied to by the plaintiffs, to view and judge of the sufficiency of the defendant's fence, which it is contended he was bound to maintain between the parties; they proceeded to examine the same, and the result of their examination was committed to writing and delivered to the defendant. No loss or destruction of this paper was attempted to be shown, and no notice was given to the de-

fendant to produce it at the trial, but parol evidence of the proceedings and the contents of this paper, was allowed against the objection of the defendant's counsel. The duties of the fence viewers in this particular were important, and in order that their action should be effectual, evidence thereof is required to be in writing. The omission to make and deliver such a writing to the delinquent party, would prevent the other from recovering in an action ; any essential defect in a writing, made and delivered would be equally so ; upon a correct fulfilment of the duty devolving upon these officers, thus indicated, the defendant was holden to make payment for that, for which he did not contract, together with a like sum as a penalty for neglect, and double the usual rate of interest for delay. It would be a violation of a reasonable rule of law to trust to the recollection of witnesses, where evidence of a character, which time could not render uncertain is accessible. This was not a paper, which the plaintiffs could suppose would be immaterial, for the facts which it should contain were indispensable.

Where the party complained of shall neglect to repair or rebuild the fence, according to the direction, within the prescribed time, the same section provides, that it shall be lawful for the complainant to make up, amend or repair the deficiency ; and when the same shall be completed and adjudged sufficient by two or more fence viewers, and the value thereof, together with the fence viewers' fees ascertained in writing, the complainant shall have a right to demand, &c. and in case of neglect or refusal to make payment thereof for the space of one calendar month after demand, &c. he may sue, &c. The case finds that the fence viewers examined the fence after the plaintiffs had professed to repair it, and that the defendant was present and made trial of its sufficiency. But they did not state to him, and there is no proof that they did state to any one, that they had adjudged it to be sufficient, or had made their judgment known in any manner whatever. They did inform the defendant of the amount of the value of the fence, as they had appraised it and their own fees for their services,

but this might have been consistent with an opinion, that the fence was still insufficient. They gave a writing to the plaintiffs expressing the same, and also that he had a right to the sum which was double the amount of the appraisal; but this writing was not exhibited to the defendant, and there is no evidence that he knew of its existence till it was presented by the plaintiffs. It was the right of the defendant to be notified of this examination. *Scott* v. *Dickinson,* 15 Pick. 276. And as he was present, it may be presumed that he could make no complaint in this particular. It was equally his privilege to be heard, and afterwards to know distinctly the result of their deliberations, in express terms. The statute cannot be construed to mean, that when they were to judge of the sufficiency of the fence, he was to derive his knowledge of that judgment by inferences from facts accompanying the examination. Nothing short of the opinion of the fence viewers of the entire sufficiency of the fence could in any degree bind him. Upon this solemn adjudication, and the value of the fence and the fence viewers' fees ascertained in writing, alone can this action be maintained. The paper put into the hands of the plaintiffs, if it had been shown to the defendant, is wanting in this particular. The opinion of the fence viewers, we are to suppose, was formed at the time of the examination, but till expressed, could have no binding effect. It would be unreasonable to hold the defendant to pay a heavy penalty without a clear knowledge that it had been incurred.

*Exceptions sustained and new trial granted.*