GEORGE S. GRIER, Administrator of Estate of Ralph W. Grier, v. KANSAS CITY, CLAY COUNTY & ST. JOSEPH RAILWAY COMPANY, Appellant.

In Banc, March 5, 1921.

1. **DEATH STATUTE: Construction: Section 5425: Penalty.** Taking the language of Section 5425, Revised Statutes 1909, in its plain, ordinary and usual sense, the entire sum to be assessed by the jury in their discretion is a penalty which the Legislature clearly intended to make primarily a punishment for causing death by negligence, unskillfulness or criminal intent, whatever incidental or secondary purpose it might at the same time subserve. [Overruling Boyd v. Railroad, 249 Mo. 122; State ex rel. v. Ellison, 213 S. W. 459; Cooley v. Durham, 195 S. W. 1058, and Johnson v. Railroad, 270 Mo. 448, in so far as they announce a contrary rule.]

2. ——: ——: ——: ——: **Amendment.** The settled construction of what is now Section 5425, Revised Statutes 1909, before its amendment in 1905, was that every dollar of the sum forfeited and paid thereunder was a penalty, and this construction had become a part of the statute itself. The precise sum, no more, no less, was recoverable in every case covered by the statute, and in no case could there be a recovery where the person whose death was wrongfully caused left no surviving husband, wife, or minor child, or, if an unmarried minor, no father or mother. The amendment of 1905, by adding the words "as a penalty" immediately after the words "shall forfeit and pay" and by authorizing a suit by an administrator, and by fixing a minimum and maximum amount which can be recovered, conclusively shows that the entire forfeiture is to be enforced in all cases as a punishment, and the amount thereof is not to be limited or controlled by the rules of law that govern the assessment of compensatory damages,

3. ————: ————: ————: **Circumstances of Death: Pecuniary Loss.** The fact that the statute authorizes the jury in fixing the amount of the recovery to consider the circumstances attending the negligent or wrongful act causing the death, does not conflict with the holding that the entire recovery is essentially and primarily penal.

4. ————: ————: ————: **Strict or Liberal Construction.** Inasmuch as this statute gives the penalty to the party aggrieved, it is both remedial and penal, and, under the rules applicable to such statutes, its provisions creating the liability should be strictly construed, while those relating to the remedy should be liberally construed.

5. ————: ————: ————: **Instructions.** Under the pleadings and evidence in this case the trial court properly instructed the jury that in determining the amount of plaintiff's award they might take into consideration the facts constituting the negligence, if any, on the part of defendant, causing the death of plaintiff's intestate, including the aggravating circumstances, if any, attending such negligence as is shown by the evidence.

6. ————: ————: ————: **Verdict: Maximum.** The undisputed facts showing that the conduct of defendant's motorman, in the management of the train on which plaintiff's intestate was a passenger, was so reckless and grossly negligent as to show an utter disregard for the lives of the passengers entrusted to his care, a verdict for $10,000, the maximum penalty fixed by the statute, is approved.

Appeal from Buchanan Circuit Court.—*Hon. Thos. B. Allen,* Judge.

AFFIRMED.

*John E. Dolman* for appellant.

(1) The court erred in refusing to instruct the jury as requested by defendant in its instructions A, B and D, that plaintiff could not recover a sum exceeding two thousand dollars. Boyd v. Railroad, 249 Mo. 110; Johnson v. Railroad, 270 Mo. 418; State ex rel. v. Ellison, 213 S. W. 459; Cooley v. Dunham, 195 S. W. 1058. (2) The court erred in refusing to instruct the jury as requested by defendant in its instructions E, F, and 4.

State ex rel. Coal Co. v. Ellison, 270 Mo. 645; State ex rel. Dunham v. Ellison, 213 S. W. 459; Secs. 1796, 1797, R. S. 1909; Laws 1895, p. 168; Boyd v. Railroad, 236 Mo. 94; Parsons v. Railroad, 94 Mo. 299; Smith v. Railroad, 92 Mo. 359; Morgan v. Durfee, 69 Mo. 478; Barth v. Railroad, 142 Mo. 558; Railroad Co. v. Arms, 91 U. S. 495. (3) In refusing the instructions requested by the defendant and in giving the instructions requested by plaintiff, the court placed an erroneous construction upon Article I of Chapter 38, entitled "Damages," and more particularly upon Section 5425 of that article, Revised Statutes 1909, as amended. Sutherland on Statutory Construction, sec. 333; Stroutman v. Railroad, 211 Mo. 255; McKay v. Minner, 154 Mo. 613; Broadwater v. Railroad, 212 Mo. 445. (a) "Blackstone says that in amending laws the old law should be first considered. Second, the mischief which the old law failed to prevent, and third the remedy necessary to make the old law complete and effective." Boyd v. Railroad, 249 Mo. 122; 36 Cyc. 1164-1165. (b) "When a statute has been construed by the highest court having jurisdiction to pass on it, such construction is as much a part of the statute as if plainly written into it originally and every statute is to be construed with reference to the general system of laws of which it forms a part," and "In the construction of a particular statute or in the interpretation of any of its provisions all acts relating to the same subject or having the same general purpose should be read in connection with it as together constituting one law." 36 Cyc. 1144, 1147. (c) The old law of 1855 providing for the recovery of a gross sum of $5000 was construed by this court to be both penal and compensatory. Coover v. Moore, 31 Mo. 574; Fillmore v. Railway, 85 Mo. 168; King v. Railroad, 98 Mo. 235; Hennessy v. Brewing Co., 145 Mo. 112; Matlock v. Railroad, 198 Mo. 499; Gilkerson v. Railroad, 222 Mo. 202. (d) The amendment of 1905 was passed for three reasons: First, to create a right of action in the

survivor or administrator of a servant whose death was caused by the negligence of a fellow-servant. Stroutman v. Railroad, 211 Mo. 255; Broadwater v. Railroad, 212 Mo. 445. Second, to correct the injustice of the old law in respect to giving the same amount of damages for the loss of life which was wholly worthless, as it gave to the loss of a life which was of great value to the survivors of the person killed. Boyd v. Railroad, 236 Mo. 88; Boyd v. Railroad, 249 Mo. 123. Third, to permit an administrator to sue for the benefit of the descendants of the deceased not otherwise expressly named in the statute. Sec. 5425, R. S. 1909; Laws 1905, p. 135. (4) "The test whether a law is penal in the strict and primary sense is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual." Huntington v. Attrill, 146 U. S. 689, 36 L. Ed. 1123; O'Sullivan v. Felix, 233 U. S. 325; Westerman v. Dispatch Ptg. Co., 233 Fed. 614; Langdon v. Penn. Ry. Co., 194 Fed. 495; Atlanta v. Chattanooga, 127 Fed. 23; Brady v. Daly, 175 U. S. 161, 44 L. Ed. 109; City of Hudson v. Granger, 52 N. Y. Supp. 9; Gilkerson v. Railroad, 222 Mo. 202; Mo. Pac. Ry. v. Humes, 115 U. S. 523; Carroll v. Railway, 88 Mo. 239. (a) The words "forfeiture" and "penalty" are synonymous terms. 3 Words and Phrases (2 Ser.), 948. (b) So that adding the word "penalty" in the amendment of 1905 added nothing to the meaning or effect of the section under consideration. Young v. Railroad, 227 Mo. 307; Boyd v. Railroad, 249 Mo. 122; Westerman v. Dispatch Ptg. Co., 233 Fed. 614. (5) The old statute providing for the recovery of the gross sum of $5,000 for negligently causing the death of another, was held constitutional for the same reasons and upon the same grounds, that the statute providing for double damages against a railroad for a failure to fence its track, viz., for neglect in the performance of a duty owing the public. Carroll v. Mo. Pac. Ry., 88 Mo. 246; Humes v. Railroad, 82 Mo. 221, 115 U. S. 512. (a) "It is upon that theory the

constitutionality .of that section is maintained, other-
wise it would be open to the objection that it authorized
the taking of private property for private use and the
taking of property without due process of law contrary
to Sections 20 and 30 of Article 2 of the Constitution of
1875.'' Gilkerson v. Railroad, 222 Mo. 202.    (b) To
hold this statute, since the amendments of 1905 and
1911 to be. strictly penal, having no regard for pecuniary
loss, but simply fixing a punishment. to be assessed by
the jury within certain limits, according to the culpability
of the act causing the death, would violate the Federal
and State Constitutions prohibiting the taking of private
property for private use and the taking of property
without due process of law, at least so far as it permits
a punishment to be inflicted upon the railway company
for the death of a servant, caused by the negligence of
a fellow-servant.    Black on Const. Law (2 Ed.), p.
351; Ives v. Railway, 201 N. Y. 271, 34 L. R. A. (N. S.)
162.    (c) In order to uphold the constitutionality of
this statute in the case at bar, it must be construed as
being both penal and compensatory, since the infliction
of a penalty of $10,000 and more than $2,000 in this
case as a punishment for the ordinary neglect of the
motorman, in miscalculating the distance his car was
from the curve on account of the density of the fog
and which on account of its construction, he knew he
should approach at a slower rate of speed, would be
out of all proportion to the public wrong and amount to
to the taking of the defendant's property, without due
process of law.    Mo. Pac. Rp. v. Tucker, 230 U. S. 340,
57 L. Ed. 1507; Waters-Pierce Oil Co. v. Texas, 212
U. S. 86, 53 L. Ed. 417; Coffee v. Harlan, 204 U. S. 659.
(d) Where the penalty prescribed is so severe and op-
pressive as to be wholly disproportioned to the offense
and obviously unreasonable, the due process clause of
the Fourteenth Amendment to the Federal Constitu-
tion is violated.    Railway Co. v. Williams, 251 U. S. 63.

*B. G. Voorhees* and *Culver & Phillip* for respondent.

(1) The penalty provided for causing death under Sec. 5425, R. S. 1909, is not fixed at or limited to $2000, and the remaining sum between $2000 and $10,000 provided to cover exclusively actual damages; the penalty is any sum, in the discretion of the jury between $2,000 and $10,000, to be determined by a consideration of the extent of the wrongful act. And for the purpose of enabling the jury to determine the extent of the wrong and to "make the punishment fit the crime," the jury may consider not only evidence of pecuniary loss, but also evidence of the facts and circumstances of the negligence. R. S. 1909, sec. 5425; Murphy v. Railroad, 228 Mo. 55; Young v. Railroad, 227 Mo. 307; Boyd v. Railroad, 236 Mo. 54; Burge v. Wabash Railroad, 244 Mo. 76; Boyd v. Railroad, 249 Mo. 110; Potter v. Railroad, 136 Mo. App. 125; Childress v. Railroad, 141 Mo. App. 688; Moyes v. Railroad, 158 Mo. App. 461; Loomis v. Railroad, 188 Mo. App. 204; Harshaw v. Railroad, 173 Mo. App. 468; Loomis v. Ry., 188 Mo. App. 204; Hankins v. People, 106 Ill. 628. (2) Section 5425, prior to the amendment in 1905, was not both penal and compensatory in the sense that a moiety or aliquot part of the $5000 was a penalty and the remainder was for compensation, but only in the sense that the entire $5000 was a penalty so far as the wrongdoer was concerned, and all compensation so far as the party entitled to sue was concerned, because the State gave the penalty to those who had suffered or were presumed to have suffered loss. Mayes v. Railway 158 Mo. App. 461; Casey v. Transit Co., 116 Mo. App. 235; Casey v. Transit Co., 205 Mo. 721; Johnson v. Railway Co., 270 Mo. 422; Gilkerson v. Railroad, 222 Mo. 201; Burge v. Railroad, 244 Mo. 90. (3) For many years prior to the amendment of 1905, Section 5425 had been construed by every appellate court in this state to mean that the entire $5000 was a penalty. In 1905 the Legislature amended

the act retaining its exact language (so far as the portion of the act in question is concerned), and added, to emphasize and put its meaning beyond cavil, "as a penalty." The amount was changed from $5000 to not less than $2000 nor more than $10,000. After the amendment in 1905 it was construed to mean that the entire sum from $2000 to $10,000 was a penalty. Potter v. Railroad, 136 Mo. App. 144; Childress v. Railroad, 141 Mo. App. 667; Young v. Railroad, 227 Mo. 367. (a) The statute had been given that construction when in 1911 the Legislature amended it (in certain other respects) and re-enacted it. "The re-enactment of a statute after a judicial construction of its meaning, is to be regarded as a legislative adoption of a statute as thus construed." Sutherland on Statutory Construction, sec. 333; Stroutman v. Railroad, 211 Mo. 255; McKay v. Minter, 154 Mo. 613.

RAGLAND, C.—This suit was instituted in the Buchanan County Circuit Court to recover the penalty provided by Section 5425, Revised Statutes 1909, for causing death. The plaintiff had judgment and the defendant appeals. We adopt with some slight modifications respondent's statement of the case. As so modified it is as follows:

Ralph W. Grier, of St. Joseph, 38 years of age, a graduate of the Missouri University, a lawyer with a lucrative practice, was injured in a wreck on appellant's railroad, while a passenger thereon, early Thanksgiving morning in 1917, and died the following day in consequence of those injuries. He was unmarried and with no dependent relatives. His administrator filed this suit for $10,000 damages and a jury awarded the full amount.

Appellant operates an electric interurban line from St. Joseph to Kansas City and Excelsior Springs. Ralph W. Grier was a passenger on the last train which left

286 Mo.—34

St. Joseph Thanksgiving eve for Kansas City. The train, which consisted of two cars, was running about thirty minutes late. It left the track at a switch point in North Kansas City, while traveling from twenty to twenty-five miles per hour, and the front car, in which Grier was riding, toppled over on its side after running about 130 feet over a street pavement.

Grier's legs were thrust through a window and caught between the side of the car and the pavement as the car turned over. The wreck occurred about 1:30 o'clock a. m. at a point about four blocks from the appellant's general shops. When the car first fell on Grier, it crushed one leg just above the ankle, and pulled the foot six or eight inches from that ankle, so that his foot was held on the leg by the extended tendons and mangled flesh. The other ankle was dislocated but not badly crushed.

After working about forty-five minutes to lift the car off of Grier, appellant's wrecking crew succeeded in raising the car six or eight inches by means of jacks, when it fell back upon Grier, catching his leg eight or ten inches higher up, and mashing off practically all of the flesh on that leg almost to the knee. Finally, after Grier had lain under the car about two hours, a surgeon released him by cutting off the mangled foot, and the injured man was taken to a hospital in Kansas City. A second amputation was performed the following forenoon, but Grier died a few hours later as a result of shock.

The train on which Grier was a passenger traveled south to a point about three-fourths of a mile north of North Kansas City. Then it traveled around a very short, sharp curve and ran east for two blocks at a right angle with the course it had been following. Then, rounding another sharp curve, the train headed approximately due south and traveled a straight line of track about three-fourths of a mile to the place where the wreck occurred. This was at the intersection of Swift

Avenue and Armour Boulevard, where are located a bank, a drug store, a restaurant—in fact, the entire business district of North Kansas City.

Armour Boulevard extends east and west. Swift Avenue extends north and south. There was a set of double tracks extending east and west in Armour Boulevard. Cars from St. Joseph traveled south along Swift Avenue to Armour Boulevard, and there made a very short, sharp turn into Armour Boulevard, and traveled thence west on the north track. The south track in Armour Boulevard was used by east-bound cars traveling from Kansas City to St. Joseph and to Excelsior Springs. At the point where the line from St. Joseph began to curve around the corner to the west into Armour Boulevard was a tongue switch. That was where the train left the track. The printed rules of appellant required its motormen to reduce speed to two miles per hour at this switch. The train on which Grier was riding did not reduce its speed at this switch point and curve, and was running 20 or 25 miles per hour at that time, and the inevitable happened. When the motorman rounded the two sharp curves just before he entered North Kansas City, he knew he was within three-fourths of a mile of this tongue switch.

Although it was a foggy night, passengers on the train could see the buildings of North Kansas City and one of them remarked a moment before the wreck occurred, "We are right here in North Kansas City, now, close to the switch." A witness heard the racket the train was making before it left the track. Then she heard the crash of the wreck. She looked out of the window of her apartment and, despite the fog, could see the trucks of the over-turned car 100 feet away. After leaving the track, the front car ran about 130 feet, crossing over three of the east and west rails in Armour Boulevard, breaking off a big telephone pole and toppling over on the south rail of the south track. These rails projected three or four inches above the pavement.

It was against the rules of appellant for any person except certain specified officials to ride in the vestibule with the motorman. A person was riding in the vestibule with the motorman when the wreck occurred. The train crew and the person who was riding with the motorman were in the court-room at the trial, but appellant put none of them on the witness stand.

The part of the petition charging the negligence on which the action is grounded and the prayer are as follows:

"That while said Ralph W. Grier was so riding upon said car of defendant as a passenger, and when said car had arrived at or near the station of North Kansas City, in said Clay County, upon said line of railroad, the defendant, its agents and servants in charge of and operating said car so recklessly, carelessly and negligently ran and operated said car as to cause and permit said car to leave the rails and track upon which it was running and to turn over on its side and be wrecked; that as a result of said negligence and carelessness upon the part of defendant, its agents and servants, said Ralph W. Grier at said time and place received injuries on or about said 28th day of November, 1917, which said injuries so received resulted in his death on or about the 30th day of November, 1917.

"Plaintiff says that by reason of said reckless, careless and negligent acts and conduct on the part of the defendant, its servants, agents and employees, which caused and resulted in the death of said Ralph W. Grier, a cause of action for ten thousand dollars has accrued to plaintiff and against the defendant.

"Whereupon, wherefore, plaintiff prays judgment against defendant for ten thousand dollars, together with his costs."

The answer, so far as material here, is a general denial.

For the plaintiff the court instructed the jury that "in determining the amount you will award the plaintiff

you may take into consideration the facts, constituting the negligence, if any, on the part of the defendant, causing the death of the said Ralph W. Grier, including the aggravating circumstances, if any, attending such negligence as is shown by the evidence.'' At the instance of both plaintiff and defendant, the court further instructed the jury that in determining such amount they could not take into consideration whether or not deceased's beneficiaries would suffer any pecuniary loss by reason of his death. The defendant asked and the court refused an instruction that plaintiff was not entitle to recover a sum in excess of $2000. The appellant complained in its motion for a new trial, and in its formal assignment of error here, of the refusal of the trial court to give other instructions requested by it. But as appellant's counsel do not mention those instructions or the court's action in regard to them in either their brief or argument, their complaint in this respect will be treated as abandoned.

It is appellant's contention that the statute provides for both a penalty and compensatory damages, that the sum of $2000 is the penalty, and the remainder up to the $10,000 limit is compensatory, and that the penalty is inflexibly fixed at $2000—it can be neither

**Penalty or Compensation?** more nor less. If that centention be sound the court was in error in instructing the jury that they could assess against defendant as a penalty a sum not less than $2000 nor more than $10,000, in their dicretion, and that in so doing they could take into consideration ''the facts constituting the negligence, if any, . . . including the aggravating circumstances, if any.'' On the contrary, as it was conceded that there was no pecuniary loss for which compensatory damages could have been assessed, the jury should have been directed to bring in a verdict for the specific sum of $2000 in the event they found for plaintiff. The trial court, however, evidently held that the statute did not limit the penalty to $2000, but that it authorized the jury, in its

discretion, where the facts warranted it, to assess as a penalty any sum not less than $2000 nor more than $10,000.

This is not the first time that this statute has been before this court for interpretation, but it is the first instance in which its construction has been in question here from the precise angle of this case. On that account and because some confusion has arisen as to what has really been decided in former expositions, it will not be amiss to re-examine the statute for the purpose of determining the legislative intent as therein expressed.

I.  It is sometimes advantageous to recur to elementary principles. We deem it so now. The primary rule for the interpretation of statutes is that the legislative intention is to be ascertained by means of the words it has used. All other rules are incidental and mere Statutory aids to be invoked when the meaning is clouded. When the language is not only plain, terpretation. but admits of but one meaning, these auxiliary rules have no office to fill. In such case there is no room for construction. Again, Section 8057, Revised Statute 1909, requires that, unless plainly repugnant to the intent of the Legislature, or of the context of the same statute, "words and phrases shall be taken in their plain or ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import." In view of the elementary rule just noted and this statutory requirement, it is obvious that the way to determine whether the sum recoverable under Section 5425 is penalty to the extent and only to the extent of the $2000, or whether it is, or may be, penalty all the way up to the limit of $10,000, is first to look to the language of the statute itself. If, taking its words and phrases in their plain or ordinary and usual sense, and understanding its technical words and phrases, if any, according to their technical import, it is clear and

unambiguous, it answers uncontrovertibly the question under consideration and we need look no further. The statute reads:

"Whenever any person . . . shall die from any injury resulting or occasioned by the negligence, unskillfulness or criminal intent of any . . . servant or employee, while operating . . . any car or train of cars, or any . . . electric . . . car or train of cars, . . . the corporation in whose employ any such . . . servant or employee shall be at the time such injury is committed . . . shall *forfeit and pay as a penalty, for every such person . . . so dying,* the sum of *not less* than $2000, and not exceeding $10,000, in the discretion of the injury, which may be sued for and recovered by," etc.

Before entering upon a consideration of this language for the purpose of ascertaining its meaning, it should be first determined whether any of its words and phrases, relating to or characterizing the sum recoverable, are technical, and if so, what their peculiar and appropriate meaning in law is. Only one of such words, under the greatest possible latitude, could be said to be technical and that is the word "penalty." But this word, in both its popular and legal significations, is synonymous with "punishment." In neither, does it connote any idea of compensation. Then, if this word be understood to mean punishment, and all the other words and phrases be taken in their plain or ordinary and usual sense, is the language of the statute, in so far as it characterizes the recovery thereunder, in any respect either obscure or ambiguous? Can it by any process of reasoning, or by any trick of verbal gymnastics, be held to mean that the wrongdoer shall forfeit and pay as a penalty $2000, and in addition only such sum by way of compensation as will cover the actual pecuniary loss, if any, suffered by the next of kin, or personal representatives? Damages or compensation is nowhere hinted at. Its express language is:

*All Penalty.*

"shall forfeit and pay as a penalty . . . the sum of not less than $2000, and not exceeding $10,000." What is it that is fixed at "not less than $2000"? The penalty. And what is it that is fixed at "not exceeding $10,000"? The penalty. If the Legislature intended to fix the penalty at the specific sum of $2000 why did it say that it should be "not less than $2000"? And why that it should not exceed $10,000? Plainly the entire recovery, whether it be the minimum of $2000 or the maximum of $10,000 or an intermediate sum—in the discretion of the jury—is penalty, because the statute unequivocally says so. Not only from the language just quoted is it so obvious as scarcely to be debatable that the entire sum to be assessed by the jury in their discretion is a penalty, but from the statute considered as a whole it is clearly manifest that the Legislature intended to make the entire recovery primarily a punishment for causing death by negligence, unskillfulness, or criminal intent, whatever incidental or secondary purpose it might at the same time subserve.

The only part of the section that has ever given rise to any real controversy since its amendment in 1905 is the phrase, "in the discretion of the jury." This language as far as it goes is plain enough. It is what is left unexpressed that has been the source of perplexity. The exercise of discretion implies a knowledge of the facts upon which the discretion may properly operate. What facts were so intended the Legislature did not say, and attempts have been made to supply the omission by construction. Now, there is no repugnancy between the express language on the one hand that the sum recoverable is a penalty and on the other that it shall be assessed within fixed limits in the discretion of the jury. [Young v. Railroad, 227 Mo. 307.] And if the omission in respect to the facts that the jury may consider as a guide to their discretion is to be supplied by construction, such construction must also be not inconsistent with the language declaring that the sum fixed by them shall be

forfeited and paid as a penalty. It is elementary that in construing a writing, whether it be a statute or a contract, the clear meaning of unequivocal language cannot be controlled or overthrown by a construction in respect to that which is obscure or incomplete. If, therefore, under a given construction of the statute in question, it be held that the Legislature intended that the jury should take into consideration facts showing pecuniary loss, and if it be further held that a consideration of such facts is inconsistent with the entire recovery being a penalty, then such construction would not be permissible and would have to be abandoned, even though it were deemed the most desirable in its consequences of all possible interpretations. "When the words admit of but one meaning, a court is not at liberty to speculate on the intention of the Legislature, or to construe an act according to its own notions of what ought to have been enacted." [York & Midland R. Co. v. R. I. H. & B., 864.]

II. It might be suggested that the application of the rule of literal interpretation in this case would defeat the manifest purpose of the statute, considered historically and in the light of external circumstances existing at the time of its enactment. From such **Statutory** viewpoint the legislative intent would be **Construction:** discoverable by taking into account the fol- **History:** **Amendment.** lowing considerations: What was the law before the statute was passed; what was the mischief it failed to prevent; what remedy did the Legislature provide; and the reason for the remedy? Before the amendment of 1905, the statute read, so far as material here, "shall forfeit and pay the sum of $5000." As it then read it had been on the statute books of this State for many years. Its construction was well settled and that construction had become a part of the statute itself. As construed, every dollar of the sum forfeited and paid thereunder was a penalty. [Casey v. Transit Co., 116 Mo. App. 235, and cases cited.] Because the forfeiture was recoverable by those who had sustained,

or were presumed to have sustained, a pecuniary loss, it was said to serve a two-fold purpose; it operated as a punishment for causing death, and at the same time it afforded compensation for the ones who suffered pecuniary injury thereby. [King v. Railroad, 98 Mo. 235, 239.] For these reasons, the statute was said to be partly penal and partly compensatory, but it was never considered for a moment that a moiety or aliquot part of the sum forfeited was by way of penalty and the remainder as compensation. Nor was there ever any question but that the object of the statute was primarily to punish, and secondarily or incidentally to afford compensation.

Under the statute as construed before the amendment, those who were entitled to sue were required to sue for the exact penalty. The precise penalty, no more and no less, was recoverable in every case, regardless of whether death was caused by mere unskillfullness, or by negligence, or by criminal intent, and regardless of whether the person killed was a man who was "a vagabond, a curse to his family, consuming the earnings of his wife and children," or whether he was a comfort to them "earning thousands by his industry and spending it liberally for their benefit." Those inequitable consequences were well known, and had been the subject of repeated comment by the courts of the State and by others. It may be assumed, therefore, that these consequences were the mischief that the Legislature sought to prevent by the amendment. If that assumption be true, then the remedy appointed and the reason for it are plainly manifest. By striking out "$5000" and substituting in lieu thereof "not less than $2000 and not exceeding $10,000, in the discretion of the jury" the lawmakers intended that the jury in fixing the forfeiture should take into consideration both the facts constituting the negligence or wrongful act, with the attending, mitigating and aggravating circumstances, and those showing the extent of the pecuniary loss inflicted. But in

making the forfeiture variable instead of a fixed sum, the Legislature was careful to point out that no other change in its character was intended. In anticipation, apparently, of an attempt to change by construction the recovery from a penalty to compensatory damages, because the jury was given a discretion in fixing the amount, and in order to make plain that no such change was contemplated by the amendment, the words "as a penalty" were added immediately after the words "shall forfeit and pay." This addition is but a repetition of the meaning conveyed in the words "forfeit and pay," and the very fact that it is a repetition (presumably unnecessary) and was incorporated in the statute for the first time with and as a part of the amendment, makes plain beyond controversy that the lawmakers intended that the entire recovery should continue to be a penalty in the same respect that it had theretofore been.

As just pointed out, what is now Section 5425, prior to its amendment in 1905, was held to be primarily a penal statute, enacted pursuant to the police power of the State; and having for its object the safeguarding of human life. So viewed it was defective in another particular—it did not extend its protective influence to all lives. It created no liability where the person whose death was wrongfully caused left no surviving husband, wife, or minor child, or, if an unmarried minor, no father or mother. The amendment remedied this defect by providing that the administrator or executor of such person might sue and that the recovery should be distributed according to the laws of descent. It thus appears that as orginally enacted the statute provided for a recovery by those only who had presumptively sustained pecuniary injury through the tortious death, while as amended it creates a liability not only in cases where there is presumed to be a pecuniary loss, but in those as well where there is ordinarily no such loss. In the latter class of cases where there is in fact no pecuniary injury suffered, as in the case at bar, the recovery must necessarily be

penalty, and nothing more, and in these cases as well as in the others, according to the plain language of the statute, the amount thereof is "the sum of not less than two thousand dollars and not exceeding ten thousand dollars, in the discretion of the jury." The amendment, in creating a liability for causing death in cases where there is no resulting pecuniary injury, effects to some extent a departure from the original policy of the statute. If, however, the entire recovery before the amendment was rightly construed to have been primarily a penalty, with much greater reason it must now be held so to be. As heretofore stated, the legislative intention in this respect is emphasized by the additon of the words "as a penalty." They show beyond all question that the Legislature intended that the entire forfeiture provided by the statute as amended is to be enforced in all cases as a punishment and that the amount thereof is not to be limited or controlled by the rules of law that govern the assessment of compensatory damages. The use of the words "as a penalty" sharply distinguishes Section 5425 in its objective from that of the two sections immediately following which authorize the giving of such damages as may be fair and just with reference to the necessary pecuniary injury resulting from the death.

III. It cannot be said that the view that the jury may take into consideration the circumstances attending the negligent or wrongful act causing death and also the extent of the pecuniary loss, if any, in fixing the amount of the recovery, is in any respect incongruous with the holding that the entire recovery is essentially and primarily penal. As to the first, the acts or omissions constituting negligence, or evidencing criminal intent, with their attendant circumstances, would unavoidably be brought to the knowledge of the jury in the effort to establish liability and would be considered by them in that connection; and, if the jury, without other direction,

Statutory Construction: Harmonious Interpretation.

were merely told to assess as a penalty a sum not less than $2000 and not exceeding $10,000, in their discretion, in making the assessment they would inevitably and necessarily, and just as properly, take these same facts into account as they would were they fixing the punishment in a prosecution for a purely criminal offense. As to the second, it is a common practice by legislative bodies, in prescribing punishments for certain crimes against property, to make the severity of the punishment dependent in some degree upon the extent of the pecuniary loss inflicted, or attempted to be inflicted, on the owner. Again, there are many statutes providing for the recovery of penalties by civil action where the penalty recoverable is dependent upon the actual loss sustained. Such, for example, are statutes allowing double or treble damages for injuries resulting from various torts. Such additional damages, being in excess of compensation, are penalties, regardless of the euphonious terms by which they may be designated. And these penalties, by the express language of the statutes themselves, are measured by the exact amount of the pecuniary loss suffered as determined by the jury. There is nothing, therefore, in the point that a construction that makes it proper for the jury to take into consideration the pecuniary injury in assessing the penalty converts the statute *pro tanto* into one for the recovery of compensatory damages.

It has been suggested that the construction contended for by appellant is the only possible one under which can be carried out the evident purpose of the Legislature to have the actual money loss, if any, taken into account by the jury in fixing the amount of the recovery; that such legislative purpose cannot be discovered and effectuated except through a liberal construction of the statute, which is not permissible if the entire recovery authorized is a penalty. As to this it may be said that "strict construction" is not a precise but a relative expression; it varies in degree of strictness according to the

character of the law under construction. "Statutes which provide a penalty recoverable by the party aggrieved are remedial as well as penal. Hence two diverse principles have some application; that of requiring strict construction on account of the penalty, and that of liberal construction to prevent the mischief and advance the remedy." [Sutherland on Stat. Cons. (2 Ed.) sec. 532.] Applying the rule to the statute under consideration, the provisions giving the penalty, that is, creating the liability, should be strictly construed, while those relating to the remedy should be liberally construed. [Abbott v. Wood, 22 Me. 541; Ordway v. Bank, 47 Md. 217.]

According to appellant's construction, the language under consideration, in effect, merely provides a measure of damages in that it means "the $2000 is the penalty, and all in excess of that is compensatory up to the limit of $10,000." If that construction be sound, the statute certainly presents some curious anomalies. For example, the punitive damages, the $2000, being inflexible, it follows that the compensatory damages, and only such damages, are allowable "in the discretion of the jury." In actions at common law, where both compensatory and punitive damages may be awarded, the giving of the actual damages is not a matter of discretion, but one of absolute right, and such damages are required to be measured by standards that make them, as far as it is humanly possible, an exact equivalent in money of the injury suffered, while on the other hand, the giving or withholding of punitive damages, as well as the amount thereof, lies wholly within the discretion of the jury.

Another of the consequences of appellant's construction is disclosed by considering Section 5425 in connection with the two compensatory sections (5426 and 5427) of the Death Statute. Under the latter sections, if the death of an employee of a railroad company results from its negligence, not in connection with the running or management of its cars, and such negligence is wanton

or gross, a jury can in its discretion assess the punitive damages, the penalty, at approximately $10,000; provided, of course, that some compensatory damages are recoverable. But if the death of a passenger on one of the trains of the same company results from, or is occasioned by, the criminal intent of its employees in the operation of the train, the punishment, by virtue of Section 5425, as so construed, cannot exceed a forfeiture of $2000. In other words, while individuals and corporations generally can be penalized up to practically $10,000 for causing death by negligence or wrongful act, those who operate railroad trains or other public conveyances, for the same offense while so engaged, are not to be fined or mulcted in excess of $2000. In the absence of language plainly expressing such purpose, it cannot be believed that the Legislature in amending the three sections intended consequences so extraordinary.

Appellant says that its contention as to the construction in question finds support in what has come to be known as the Second Boyd Case, 249 Mo. 110. In this he is mistaken. That was a suit to recover the penalty under Section 5425. The only question presented for decision in this court was in respect to the propriety of the trial court's action in having received evidence tending to prove the age, condition of health, earning capacity of plaintiff's husband at the time of his death, and the number of minor children left by him, and in having directed the jury to take this evidence into consideration in assessing plaintiff's recovery. No other complaint was made by appellant, nor was there any other question briefed or argued by counsel. The instruction that was the subject of controversy contained this language: "and you may also take into consideration the facts constituting negligence on the part of defendant causing the death." But no complaint was made in respect to this part of the instruction; both sides conceded that it presented a proper matter for the consideration of the jury in determining the amount of the recovery. On the pre-

sentation thus made the instruction as a whole was approved and the judgment of the lower court affirmed. It is perfectly obvious, therefore, that the only question decided was that the Legislature intended that the jury should at least take into consideration the pecuniary loss, if any, in assessing the recovery under Section 5425. There is some language in the opinion entirely susceptible of the meaning that appellant ascribes to it. Such language does not seem to have expressed the *raison d'être* of the conclusion reached by the court, or to have been in any respect necessary in deciding the case as it was decided. In any event, in so far as it lends support to the construction contended for in this case, it is disapproved. The case of State ex rel. v. Ellison, 213 S. W. 459; Cooley v. Dunham, 195 S. W. 1058, and Johnson v. Railroad, 270 Mo. 418, to the extent that they are based on the same erroneous view as to what was decided in the Boyd case, supra, should no longer be followed.

In accordance with the views herein expressed, we are of the opinion, and so hold, that under the pleading and evidence in this case the trial court properly instructed the jury that in determining the amount of plaintiff's award they might take into consideration "the facts constituting the negligence, if any, on the part of the defendant causing the death of said Ralph W. Grier, including the aggravating circumstances, if any, attending such negligence as is shown by the evidence."

It appears from the undisputed facts that the conduct of defendant's motorman, in the management of the train on which Grier was riding, was so reckless and grossly negligent as to show an utter disregard for the lives of the passengers entrusted to his care. We are not able to say, therefore, that there was an abuse of discretion on the part of the jury in assessing the penalty at the maximum, $10,000. It follows that the judgment should be affirmed. It is so ordered. *Small, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAGLAND, C., is adopted as the opinion of Court in Banc. *Walker, C. J.,* and *D. E. Blair, J.,* concur; *J. T. Blair* and *Elder, JJ.,* concur in result; *Graves* and *Higbee, JJ.,* dissent; *Woodson, J.,* not sitting.