WESLEY CUMMINS, by Next Friend et al., Appellants, v. KANSAS CITY PUBLIC SERVICE COMPANY, CHARLES BROWN AND CLAUD BROWN. —66 S. W. (2d) 920.

Court en Banc, December 22, 1933.

674

*Clif Langsdale* and *Roy W. Rucker* for appellants.

*Charles L. Carr, M. T. Prewitt* and *E. E. Ball* for Kansas City Public. Service Company.

*Crouch & Crouch* and *John D. Wendorff* for Charles L. Brown and Claud E. Brown.

HYDE, C.—This is an action for damage for wrongful death. Plaintiffs are the three minor children of Archie C. Cummins, who was killed when a street car belonging to defendant Kansas City Public Service Company collided with a bus. The deceased was a passenger on the bus, which was owned by defendants Brown, co-partners, in the business of operating automobile busses for carriage of passengers for hire under the name of Brown Brothers Bus Company. Plaintiffs' amended petition alleged that their father was killed on September 3, 1928; that at that time the wife of deceased, mother of plaintiffs, was living and did, upon September 25, 1928, commence a suit for damages for his death; but that she died on August 1, 1929, while her said suit was pending but before the same had been reached for trial or any order of any kind made therein; and that thereafter, upon her death, being suggested by the defendants and upon their request, her suit was dismissed. This suit was commenced August 31, 1929, within one year after the death of plaintiffs' father. Separate demurrers were filed by the defendants upon the ground that the petition did not state facts sufficient to constitute a cause of action and upon the further ground that whatever cause of action may have accrued out of the death of said Cummins was appropriated by his widow by filing suit as stated in plaintiffs' petition, which was merely a restatement of the first ground but giving reasons why plaintiffs did not state a cause of action. These demurrers were sustained, plaintiffs refused to plead further, and judgment was entered for defendants. From this judgment plaintiffs appealed.

The sole question presented upon this appeal is whether the minor children of the deceased had any right under our wrongful death statutes to sue for the death of their father, when their mother, the wife of the deceased, was living at the time of his death and had brought suit within six months after his death, but had died before the expiration of the one-year period, in which they were permitted to sue in case she had not done so.

We have two wrongful death statutes, Section 3262, Revised Statutes 1929, the railway, steamboat and stage coach statute, and Section 3263, Revised Statutes 1929, the general statute, covering death by other wrongful act, negligence or default. [See Casey v. St. Louis Transit Co., 205 Mo. 721, 103 S. W. 1146; State ex rel. Iba v. Mosman,

231 Mo. 474, 133 S. W. 38.] The right of beneficiaries to sue, in either case, is governed by the following portion of the former section, which provides that damages for wrongful death "may be sued for and recovered," as follows:

"*First, by the husband or wife of the deceased; or, second, if there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of the deceased* whether such minor child or children of the deceased be the natural born or adopted child or children of the deceased; . . . *or, third, if such deceased be a minor and unmarried,* whether such deceased unmarried minor be a natural born or adopted child, . . . *then by the father and mother, who may join in the suit, and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor;* or, fourth, if there be no husband, wife, minor child or minor children, natural born or adopted as hereinbefore indicated, or if the deceased be an unmarried minor and there be no father or mother, then in such case suit may be instituted and recovery had by the administrator or executor of the deceased and the amount recovered shall be distributed according to the laws of descent." [Words of the original Act of 1855 in italics.]

It is required by Section 3266, Revised Statutes 1929, that every action for wrongful death "shall be commenced within one year after the cause of action shall accrue." Saving clauses provide that absence of the defendant from the State tolls the running of this period of limitation, and also that if an action be commenced in time, when a nonsuit is taken, a new action may be commenced within one year thereafter.

No Missouri case settled the question to be decided here and in its consideration the historical basis of our wrongful death statutes is enlightening. The maxim "*actio personalis moritur cum persona*" was such an established principle of the common law, that it was well settled that an action for personal injuries did not survive to the personal representative but that the right died with the injured person. It was thought, however, that a person entitled to the services of another (as in the case of husband and wife, parent and child or master and servant) could recover for the wrongful death of such person on the theory of loss of services. The common-law rule was settled to the contrary in Baker v. Bolton (1808), 1 Campb. 493 (a husband's action for the wife's death), where Lord Ellenborough held that "in a civil court, the death of a human being could not be complained of as an injury." He did allow recovery for loss of services during the period between the time of the injury and time of death. Some American courts even thereafter, before

the passage of wrongful death acts, allowed recovery by a father for loss of services for the death of a minor son. [See James v. Christy, 18 Mo. 162; Shields v. Yonge, 15 Ga. 349, 60 Am. Dec. 698; Sullivan v. Union Pacific Ry. Co., 3 Dill. 334, Fed. Cas. No. 13599.] The first real right to recover for the wrongful death of a person (not on the theory of loss of services) was created by Lord Campbell's Act, St. 9 to 10 Vict., Chap. 93, enacted by the English Parliament in 1846. Its principal provisions were, as follows:

"I. That whensoever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

"II. And be it enacted that every such action shall be for the benefit of the wife, husband, parent, and child of the person whose death shall have been so caused, and shall be brought by and in the name of the executor or administrator of the person deceased; and in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought; and the amount so recovered, after deducting the costs not recovered from the defendant, shall be divided amongst the before-mentioned parties in such shares as the jury by their verdict shall find and direct. (An amendment in 1864 allowed a direct action by the beneficiaries when none had been brought, within six months after the death, by an administrator). ·

"III. Provided always, and be it enacted, that not more than one action shall lie for and in respect of the same subject matter of complaint; and that every such action shall be commenced within twelve calendar months after the death of such deceased person."

It is interesting to note that this act was entitled: "An Act for compensating the Families of Persons Killed by Accidents;" that it provided for an action for the joint benefit of only certain members of the family; and that it required the jury to divide the amount allowed by them into shares for these beneficiaries according to their estimate of the loss of each. It was therefore intended to be much broader in its scope than either the old (rejected) theory of the right to recover for loss of services only or the mere survival of the deceased's cause of action for his injuries. Although it provided for

an action by an administrator, the act was construed as creating a new cause of action and not as providing for a survival of any action the party injured might have had, the administrator not representing the estate of the deceased but acting as trustee for the statutory beneficiary. [Leggott v. Great Northern Ry. Co., 1 Q. B. D. 599, 45 L. J. Q. B. 557, 35 L. T. (N. S.) 334; Bradshaw v. L. & Y. Ry. Co., 10 C. P. 189, 44 L. J. C. 148, 31 L. T. (N. S.) 847.] It was held to be an action "new in its species, new in its quality, new in its principle, in every way new, and which can only be brought if there is any person answering the description of the widow, parent, or child, who, under such circumstances, suffers pecuniary loss." [Seward v. The Vera Cruz, 10 App. Cas. 59; see, also, Blake v. Midland Ry. Co., 10 Q. B. 93, 21 L. J. Q. B. 233, 16 Jur. 562, 118 Reprint 35.] This is the generally accepted view under most American statutes, which were enacted by almost all of our states within a few years after the adoption of the English act and patterned after it, although in a few states statutes provide instead for survival of the cause of action of the deceased. [17 C. J. 1184-1188, secs. 37-39; 8 R. C. L. 724-727, secs. 20-22; Tiffany, Death by Wrongful Act, sec. 23.] The Federal Employers' Liability Act provides both for a new cause of action for the loss to the beneficiaries occasioned by the death (Title 45 U. S. C. A. 51), and for survival of the injured person's own cause of action, so that his administrator can recover for his conscious pain and suffering. [Title 45, U. S. C. A. 59.] Missouri has now, after leaning the other way as hereinafter pointed out, definitely taken the view that our statute gives "a new and different cause of action" to the beneficiary; and that because its "very purpose   .   .   . was to give a cause of action where none existed at common law, it did not revive a cause of action theretofore belonging to the deceased, but it gave a new cause of action to named parties bearing relationship to the deceased." [State ex rel. Thomas v. Daues, 314 Mo. 13, 283 S. W. 51, 45 A. L. R. 1466.]

Our first wrongful death acts were passed in 1855. [See Vol. I, R. S. 1855, p. 647, chap. 51.] Sections 3 and 4 of the original act (now Secs. 3263 and 3264, R. S. 1929), adopted several of the principal features of the English act and very closely followed its wording, as to the acts from which the cause of action arises and as to the measure of damages, except that a maximum limit of $5,000 was set and consideration of aggravating and mitigating circumstances authorized. Section 6 (Sec. 3266, R. S. 1929) made the same one-year limitation as to when suit must be brought. There has been practically no change in these three sections except that the saving clauses above referred to in case of nonsuits (see Laws 1905, p. 137) and absence from the State (see Laws 1909, p. 463) were added to the limitation section, and that the maximum amount of damages which could be

recovered was increased to $10,000. [See Laws 1907, p. 252.] However, the second section of the original act, which is the statute applicable to the facts stated in the present case, added a feature not found in the English act: Namely, a fixed penalty of $5,000, where any person was killed by negligence in the operation of a railroad train, steamboat, stage coach or other public conveyance, or was killed while a passenger by reason of any defect or insufficiency in any railroad, steamboat, stage coach or other public conveyance. Street cars and automobiles used as public conveyances were included by the Amendment of 1905. [See Laws 1905, p. 135] While stage-coach travel is thus still protected, air transport has not yet been specifically included. This amendment also made the act apply where an employee's death resulted from the negligence of a coemployee. A later amendment (see Laws 1911, p. 203) made the negligent employee also liable for the penalty prescribed. The designation of the beneficiaries who were entitled to sue either under this penalty section or the other section, were stated by it. These provisions have been hereinabove set out.

The Amendment of 1905 changed the amount to be recovered under this section so that, instead of a penalty of $5,000 in all cases, the jury were given discretionary powers to fix the penalty at not less than $2,000 and not exceeding $10,000. Concerning that amendment this court, in Grier v. K. C. Clay County & St. Joseph Ry. Co., 286 Mo. 523, l. c. 538, 228 S. W. 454, said:

"Under the statute as construed before the amendment, those who were entitled to sue were required to sue for the exact penalty. The precise penalty, no more and no less, was recoverable in every case, regardless of whether death was caused by mere unskillfulness, or by negligence, or by criminal intent, and regardless of whether the person killed was a man who was 'a vagabond, a curse to his family; consuming the earnings of his wife and children,' or whether he was a comfort to them "earning thousands by his industry and spending it liberally for their benefit.' . . . By striking out '$5,000' and substituting in lieu thereof 'not less than $2,000, and not exceeding $10,000, in the discretion of the jury,' the lawmakers intended that the jury in fixing the forfeiture should take into consideration both the facts constituting the negligence or wrongful act, with the attending, mitigating and aggravating circumstances, and those showing the extent of the pecuniary loss inflicted. But, in making the forfeiture variable instead of a fixed sum, the Legislature was careful to point out that no other change in its character was intended. . . . The lawmakers intended that the entire recovery should continue to be a penalty in the same respect that it had theretofore been."

By the Amendment of 1905, a new class of beneficiaries was added

(designated under the fourth alternative) by the provision that suit could be brought by an administrator for the benefit of the next of kin, "if there be no husband, wife or minor children." The only other amendment in the original act affecting the beneficiaries was that including adopted minor children. [See Laws 1885, p. 153.] One of the new features, distinguishing the original Missouri act from the English act and many of the American statutes was the requirement that the children permitted to sue be *minors* and restricting the right of parents to sue to the death of minor children. Another was that the action was vested directly in the persons entitled to the amount recovered with preferential rights to the surviving spouse rather than providing for a suit for the benefit of all of them, sustaining a loss, by the administrator of the deceased. ▮ Then, too, while persons entitled to sue are the same under both of our statutes, the amount of their recovery is based upon entirely different principles. Section 3264, Revised Statutes 1929, provides primarily for damages for pecuniary loss such as the jury "may deem fair and just, with reference to the necessary injury resulting from such death, to the surviving parties who may be entitled to sue." [For measure of damages in such cases, see Steger v. Meehan, 63 S. W. (2d) 109, and Marlow v. Nafziger Baking Co., 333 Mo. 790, 63 S. W. (2d) 115.] In the case of a minor child this loss depends largely upon what he would have received prior to his majority. [McPherson v. St. L., I. M. & S. Ry. Co., 97 Mo. 253, 10 S. W. 846; Smith v. Mederacke, 302 Mo. 538, 259 S. W. 83; Stookey v. St. L.-S. F. Ry. Co., 215 Mo. App. 411, 249 S. W. 141.] Under Section 3262, Revised Statutes 1929, however, the cause of action is not for damages but for the penalty accruing under the statute. In a suit by minors under that section this court said: "Plaintiff's pecuniary loss was in no sense the measure of his recovery: While his award . . . could reasonably have equaled or exceeded the amount that would compensate him for his pecuniary loss, it could just as reasonably have been fixed at a lesser sum. . . . The jury in assessing the penalty against the defendant . . . may properly take into consideration the pecuniary injury inflicted upon plaintiff. . . . But such injury is but one fact to be considered with others, and the importance to be given it as a factor in determining the amount of the penalty should be left to the unfettered discretion of the jury." [Treadway v. United Railways Co., 300 Mo. 156, 253 S. W. 1037 (also 282 S. W. 441); see, also, Ward v. Mo. Pac. Ry. Co., 311 Mo. 92, 277 S. W. 908.]

▮ While it is intimated in many cases that the principal purpose of our wrongful death act was to preserve life from the perils of our modern mechanical age (see Schultz v. The Pacific Railroad, 36 Mo. 13) by providing a penalty for negligently killing a human

being, nevertheless, under both compensatory and penalty statutes, the purpose of providing compensation for those dependent upon persons killed by wrongful acts is at least one of the primary purposes of the act. This is evidenced by the fact that the amount, whether penalty or damages, which the wrongdoer was required to pay was given to the bereaved relatives to, in some measure, compensate them for their loss; and by the further fact that for fifty years (1855-1905) the only relatives granted a right of action for the death of any person, except the father and mother of an unmarried minor and the husband of a married woman (no doubt both by analogy to the loss of services theory), were those most dependent, the surviving wife and minor children. The death of an unmarried person, after reaching majority, of a minor with no surviving parent or of a widow or widower, with children of legal age, gave no right of action to anyone, no matter what the circumstances. To put it more pointedly, there was no legal accountability whatever for negligently killing such person, unless the act was one punishable under the criminal law. [See, also, our Mining Statute, sec. 13671, R. S. 1929, still limited to dependents.] Perhaps the Legislature felt that only a death, which resulted in a loss to the surviving relatives enumerated, was of sufficient social consequence to justify assessment of a penalty or damages.

To solve the question to be decided in this case, we must determine the nature of the rights given to the widow and children respectively by our statute. Because of the peculiar features of our own statutes, the decisions of other states will not solve it. The authorities upon similar situations, arising in other states, are collated in annotations in 13 American Law Reports, 225 and 59 American Law Reports, 760. They differ widely as to whether the important thing is providing for the penalty or damages, or providing for the distribution of it; as to whether such statutes are punitive or remedial; and as to whether they should be strictly or liberally construed. It is said that the action, created by the wrongful death statutes, usually has the three following distinguishing features:

"(1) That it may be maintained whenever death is caused by wrongful act, neglect, or default, such as would, if death had not ensued, have entitled the party injured to maintain an action; (2) that it is for the exclusive benefit of certain designated members of the family of the deceased; and (3) that the damages recoverable are such as result to the beneficiaries from the death."

It is also said:

"In matters which are not distinguishing features of the action created by Lord Campbell's act, these statutes differ greatly from that act, and from each other. These differences are mainly in respect (1) to the particular members of the family for whose benefit

action may be brought; (2) the persons in whose names it may be brought; (3) the time within which it may be brought; (4) the manner of distribution; and (5) in respect to practice. They differ also materially in their provisions concerning (6) the measure of damages; some fixing one amount, some another, and some none at all, as the limit of recovery; and a few providing for the recovery, also, of exemplary or punitive damages, or containing other peculiar provisions." [Tiffany, Death by Wrongful Act, secs. 22-24.] The principal provisions of the statutes of every state may be found there.

It has been said that our death statutes must be strictly construed because they are in derogation of the common law. [Jackson v. St. L., I. M. & S. Ry. Co., 87 Mo. 422, 56 Am. Rep. 460; Strottman v. St. L., I. M. & S. Ry. Co., 211 Mo. 227, 109 S. W. 67; Clark v. K. C., St. L. & C. Ry. Co., 219 Mo. 524, 118 S. W. 40; Troll v. Laclede Gas Light Co., 182 Mo. App. 600, 169 S. W. 337.] The further reason has also been pointed out that because our railroad, steamboat and stage coach statute is a penalty statute, it must be strictly construed. [8 Am. & Eng. Enc. of Law, 931.] Then it is also well said: "That statutes may be in part penal and in part remedial and that statutes which provide a penalty recoverable by the party aggrieved are in many cases construed remedial as well as penal and hence in dealing with such statutes the courts are called upon to make proper application of two adverse principles to some extent; that requiring strict construction on account of the penalty, and that requiring a liberal construction to prevent the mischief sought to be deterred and advance the remedy thereby given in favor of the party aggrieved." [Casey v. St. Louis Transit Co., 116 Mo. App. 235, 91 S. W. 419, approved by Supreme Court in 205 Mo. 721, 103 S. W. 1146.] This principle was referred to in the Grier case (286 Mo. l. c. 542, 228 S. W. 454), as follows: "The provisions giving the penalty, that is, creating the liability should be strictly construed, while those relating to the remedy should be liberally construed."

The first part of Section 3262, as does Section 3263, merely states the circumstances from which a defendant's liability will arise, and provides in the former the penalty and in the latter (by Sec. 3264) the damages he must pay. In both cases it was provided that the penalty or damages might be sued for and recovered by the parties designated in the latter part of Section 3262, which, until the Amendment of 1905, were only those dependent upon or entitled to the services of the deceased. It would seem to violate no rule of statutory construction to strictly construe the liability, penalty and damage provisions and liberally construe this part designating the persons entitled to the penalty or damages in case the defendant, by wrongful conduct in violation of the provisions imposing liability, had be-

come liable to pay such penalty or damages. Whether the purpose be primarily to punish him for such violation, or to compensate those who actually sustained a loss thereby, it would seem that either purpose would be best served by requiring the guilty person to pay when those persons existed. Should he be freed from the obligation to pay a penalty or damages for his wrongful act when such dependents survived the deceased, suffered a loss by his death, and, as here, brought suit within the statutory period of limitations? Unquestionably, it was because of its regard for the welfare of widows and orphans and the advantage to society that provisions be made to prevent them from becoming charges of public charity that the Legislature imposed liability to them for negligent acts which took away from them a husband or father.

We should also remember that " 'strict construction' is not a precise but a relative expression; it varies in degree of strictness according to the character of the law under construction." [Grier v. K. C., C., C., & St. J. Ry. Co., supra.] "It is not the exact converse of liberal construction, for it does not consist in giving words the narrowest meaning of which they are susceptible." [Meyering v. Miller, 330 Mo. 885, 51 S. W. (2d) 65.] The primary rule of construction of statutes is to ascertain the lawmakers' intent, from the words used if possible; and to put upon the language of the Legislature honestly and faithfully, its plain and rational meaning and to promote its object, and "the manifest purpose of the statute, considered historically," is properly given consideration. [See Grier and Meyering cases; 2 Lewis-Sutherland on Stat. Const. (2 Ed.), sec. 363; Endlich on Interpretation of Statutes, sec. 329; and Maxwell on Statutes (5 Ed.) 425.]

There was much confusion in the Missouri decisions (until settled by the court en banc in State ex rel. Thomas v. Daues, supra) upon the proposition as to whether the beneficiaries' cause of action was a new cause of action for their own injury, or whether it was the cause of action of the deceased for his own injuries which survived to them because the statute changed the common-law rule of "action *personalis moritur cum persona.*" The latter view was first taken. [Proctor v. Hannibal & St. Joseph Railroad Co., 64 Mo. 112, see, however, dissenting opinion to effect that this was true of compensatory section but not of penalty section; see, also, Connor v. C., R. I. & P. Railroad Co., 59 Mo. 308.] It would seem that the only change in that common-law rule is made by Sections 98-99, Revised Statutes 1919, enacted before the wrongful death statute (see R. S. 1835, p. 48, secs. 34, 35) and Section 3280, Revised Statutes 1929, enacted thereafter (see Laws 1907, p. 252). As to their effect, in connection with the wrongful death acts, see Gilkeson v. Missouri Pacific Ry. Co., 222 Mo. 173, 121 S. W. 138; Longan v. Kansas City

Rys. Co., 299 Mo. 561, 253 S. W. 758; Ryan v. Ortgier, 201 Mo. App. 1, 208 S. W. 856.

A recent decision of this court, Betz v. K. C. Southern Ry. Co., 314 Mo. 390, 284 S. W. 455, construed the effect of that part of the Amendment of 1905 adding a fourth alternative to the provision designating the beneficiaries who may sue and recover for wrongful death. This case is strongly relied upon by defendants. There a husband and wife were killed in a crossing collision. The wife was killed instantly, the husband survived for a few hours, and there were no minor children. The administrator of the deceased wife brought suit on the theory that he was given the right to sue for her death by the Amendment of 1905 and distribute the amount recovered to her next of kin according to the laws of descent, there being no husband or minor children, when this suit was begun, to sue for the wife's death. The court, after reviewing the authorities and the history of our wrongful death statute, held that the fourth alternative added by that amendment meant that the administrator could sue for the benefit of those entitled under the laws of descent only if no husband, wife or minor child survived the deceased and that the administrator could not sue in this case because the husband did survive. The court said:

"Under the wrongful death statute in question, he (the husband) fell within the first class of beneficiaries who are given the right to sue and to maintain an action thereunder. A right of action sprang up, or vested, in him, under and by virtue of the statute, immediately upon the death of his wife. The right of action thus given by statute to the husband for his wife's death is dependent solely upon his surviving his wife, and not upon the commencement, or time of commencement, of a suit by him (unless, of course, there be a minor child or children, when the husband must sue within six months after the wife's death). *His failure to sue,* whether by reason of death or otherwise, *does not revest the right of action in the wife's personal representative,* who is the plaintiff in this action." (Note—failure of a surviving spouse to sue *does vest* the right of action in the minor children.)

The argument was made by the plaintiff that "if he cannot maintain this action, then defendant must go unpunished for its negligent acts, although the primary object and purpose of the act is to punish for causing death by negligence." The court said that, although that argument was true, only the Legislature could correct it. It is said in the Grier case, concerning beneficiaries of this class:

"As originally enacted the statute provided for a recovery by those only who had presumptively sustained pecuniary injury through the tortious death, while as amended it creates a liability not only

in cases where there is a presumed loss, but in those as well where there is ordinarily no loss at all.''

Since there was no liability, where there was no one capable of sustaining an actual loss, before the amendment and since beneficiaries designated by the amendent hardly ever could suffer an actual loss, especially when those dependent upon or entitled to the services of the deceased exist, it seems reasonable that the Legislature did not intend to provide for them, if those sustaining the actual loss survived. An administrator is not entitled to bring suit for the benefit of the next of kin if other designated beneficiaries do not do so within a definite time, as minor children are, therefore, it is not unreasonable to hold that he may do so only when there are none of the designated beneficiaries, who did suffer actual loss, surviving at the time of the death. The same construction, as to similar beneficiaries, has since been put upon the Federal Employers' Liability Act by the Supreme Court of the United States. [C., B. & Q. Railroad Co. v. Wells-Dickey Trust Co., 275 U. S. 161, 48 Sup. Ct. 73, 72 L. Ed. 216, 59 A. L. R. 758.] This court has never given the provision for dependent beneficiaries the strictest possible construction. It has held that a minor child born after the death of his father may sue therefor (Bonnarens v. Lead Belt Ry. Co., 309 Mo. 54, 273 S. W. 1043) ; and that a child, if not of age when his father died, may commence suit therefor although no longer a minor. [Rutter v. Mo. Pac. Ry. Co., 81 Mo. 169; see, also, State ex rel. Mo. Pac. Ry. Co. v. Haid, 332 Mo. 616, 59 S. W. (2d) 690, subrogation of employer under the Workmen's Compensation Act.]

In the Betz case, however, this court noted the line of decisions holding that the cause of action of the surviving husband did not survive his death and noted also that the case of State ex rel. Thomas v. Daues, supra, then recently decided, had rejected the theory, stated in all of these cases as one reason for reaching that result, namely: That the action for wrongful death was a transmitted action, that is a survival of the action which the deceased had, and had definitely held to the contrary that it was a new cause of action. The court did not decide the effect of that decision upon these previous decisions, but raised the question as follows:

''*Quaere,* since the case of State ex rel. Thomas v. Daues et al., supra, was ruled by this court, would the personal representative of Charles Baker have succeeded to Charles Baker's right of action for the wrongful death of his wife, had such personal representative brought an action within the period of one year after Jennie Baker's death? That question we do not rule in this case because it does not confront us.''

Defendants point to this and say that plaintiffs cannot maintain this suit because, if anyone could maintain a suit for the death of

plaintiffs' father, it would be the personal representative of plaintiffs' mother. In view of the importance of this question and the resulting hardship to minor children, who are actual dependents, if their right to sue is lost by the death of the remaining parent, when they could still sue within the statutory period of one year, we will re-examine the authorities in light of the changed ruling of the court en banc in State ex rel. Thomas v. Daues, supra, as to the nature of the right of action which they have.

It was first held in the case of Gibbs v. City of Hannibal, 82 Mo. 143, that upon the death of the beneficiary entitled to sue, the action died also and did not survive to the personal representative of the beneficiary designated by the statute. In that case a man and his wife and two minor children, driving across a bridge, fell through it and all were killed. Suit was brought by the administrator of the wife, on the theory that she survived the others a short time, to recover for the death of her husband and two minor children. This court held that a general demurrer was properly sustained to the petition and that the beneficiary's administrator under the statute had "no standing in court." The court said: "It is a right personal to the beneficiary and does not survive to his personal representatives." The court, however, at least in part, based its conclusion upon the language of Proctor v. Hannibal, St. Joseph Ry. Co., 64 Mo. 112, l. c. 120, where the court said that the statute "creates no new cause of action but simply continues or transmits the right to sue, which the party whose death is occasioned would have had, had he lived." In other words, the court thought the action having survived once (from the injured person to the beneficiary) could not survive a second time (from the beneficiary to his administrator).

Later, in Behen v. St. Louis Transit Company, 186 Mo. 430, 85 S. W. 346, without any mention of the Gibbs case, this court held that the cause of action given by the statute survived the designated beneficiary's death and could be revived in the name of his administrator. In that case, suit had already been commenced by the designated beneficiary before his death, which was not true in the Gibbs case. This court, there, after reviewing the English authorities and cases from New York and New Jersey, stated, as a reason for its ruling, that the statute gave a new cause of action separate and distinct from any action which the deceased would have had for his injury in his lifetime. Then in Bates v. Sylvester, 205 Mo. 493, where the defendant died, it was held that the action did not survive against his estate. In so holding the court took occasion to say that Behen v. St. Louis Transit Company was wrong in holding that the statute created a new cause of action and said that the contrary doctrine had been announced in White v. Maxcy, 64 Mo. 552, l. c. 559; Gray v. McDonald, 104 Mo. 303, l. c. 311, 16 S. W. 398; Hennessy v. Bavarian Brewing

Co., 145 Mo. 104, l. c. 112, 46 S. W. 966, 41 L. R. A. 385; and Strode v. St. Louis Transit Co., 197 Mo. 616, l. c. 626, 95 S. W. 851. According to State ex rel. Thomas v. Daues, supra, the Strode case does not so hold; but that there this court was "trying to dodge and . . . succeeded in dodging the very question;" and "that this case has been wrongly cited both in and out of this State." Other cases which might be added to the above list are Harrell v. Q., O. & K. C. Ry. Co. (Mo.), 186 S. W. 677, and Millar v. St. Louis Transit Co., 216 Mo. 99, 115 S. W. 521. The Miller case followed Bates v. Sylvester, supra, saying that a new action was not created by the statute, and held that, where a widow had brought suit for wrongful death and recovered judgment but died after new trial was granted defendant, the action ended with her death and could not be revived in her administrator.

Thereafter, in Gilkeson v. Mo. Pac. Ry. Co., 222 Mo. 173, 121 S. W. 138, 24 L. R. A. (N. S.) 844, 17 Ann. Cas. 763, the matter was elaborately briefed and presented and very fully reviewed and the conclusion, reached in the Gibbs case, was adhered to, that the cause of action of the beneficiary did not survive to his administrator. In that case the father, mother and two minor children were killed in a railroad collision. One son survived until about four days after the accident. Suit was commenced by his administrator, and his deceased brother's administrator joined. The court noted the discrepancy, between the Behan and Bates cases, upon the proposition of whether or not the statute created a new cause of action or transmitted one already in existence. The court approved the former cases, holding that the action was a transmitted one, which survived the deceased to his statutory beneficiary, but gave another and, we think, better reason for its decision, saying that the fundamental error in the Behan case, in reaching the result it did, was that it "ignores the distinction between the laws that govern personal rights and those that govern the rights of property."

The court explained this further as follows:

"By applying these observations to the case at bar, we would convict appellant of violating the domestic relations of respondent's intestate, that is, of wrongfully taking the lives of deceased's father and mother, and thereby deprive him of his legal rights to have his parents care for, support and educate him, for which he is entitled to recover pecuniary damages in dollars and cents; but it would clearly be a misnomer to say, nor could it be logically contended, that the wrongful killing of deceased's parents was a wrong done to his property, or his property rights. . . .

"Could it be seriously contended that the wrongful killing of a woman's husband is an injury to her property rights? I think not, yet she is just as much entitled to the care, society and support of her

husband as are his minor children. According to all laws, excepting the cases before considered, the unlawful killing of a husband or father is a wrong done to the personal rights of the wife and the child, and not to their property rights. [Bates v. Sylvester, supra; Gibbs v. Hannibal, supra.]

"This must be so in the very nature of things, for Sections 2864 and 2865 give the widow and minor children a cause of action, even though the husband and father had no property or income of any kind whatever, and was totally incapable of earning a dollar for his own support, much less to care for and support them. In fact, his mental and physical conditions might be such as to constitute him a most grievous care and burden to them, instead of a comfort and support, yet under Sections 2864 and 2865 they would be entitled to a recovery for his unlawful death. If that is true, and it cannot be questioned, then their cause of action is given by those sections because of the violation of their domestic relations, and the wrong done to their personal rights, and not because any wrong was done to their property interest, for he had none to be injured. . . .

"The error learned counsel for respondent has fallen into, as have also the able courts whose opinions he relies upon in support of his contention in this case, consists in confusing the *pecuniary loss sustained by a minor child, caused by the wrongful death of his or her father or mother, with the damages done to his or her property or property interests by a wrongful act of another.* While the child has sustained *a pecuniary loss* or damage in both cases, and is entitled to a recovery in each, yet the injury to the one is not the same as the injury to the other—the former is an injury to his personal rights, and the latter is an injury to property rights; nor is the measure of damages the same in each case, as before pointed out. This palpable error is the very corner stone upon which those courts which entertain different views from those entertained by this court base their entire argument in favor of the survival of such a cause of action." [Gilkeson v. Mo. Pac. Railroad Co., 222 Mo. 1. c. 197.]

The matter was brought up again in Freie v. St. Louis-San Francisco Ry. Co., 283 Mo. 457, 222 S. W. 824, 13 A. L. R. 204. This case was also elaborately briefed and presented. It was a case where a husband and wife having no minor children were both killed by a railroad train at a crossing. The husband, however, survived his wife a short time. Suit was brought by his administrator. This court held that the trial court properly sustained a demurrer because the petition failed to state facts sufficient to show a cause of action. The court reviewed the Gibbs and Gilkeson cases, saying:

"The bar, judiciary and General Assembly were informed, by the publication of the above opinion in 1884, that an administrator cannot successfully maintain an action on facts exactly like the case be-

fore us. The above opinion has withstood the test of judicial criticism during the last thirty-five years and, although the Legislature has been in session many times during said period, the law has never been changed so as to confer upon an administrator the right to maintain an action under the circumstances of this case.

"The personnel of the court having changed since the decision in the Gibbs case, industrious counsel representing the plaintiff in Gilkeson, Admr., v. Ry. Co., 222 Mo. 173, conceived the idea of urging this court to change its ruling in respect to the principles of law declared in the Gibbs case. . . .

"With the published ruling in the Gilkeson case, following that in Gibbs v. City of Hannibal, supra, the Legislature has never taken any action to overturn the above cases, and have, apparently at least, acquiesced in the construction placed by this court upon said sections." [Freie v. St. Louis-San Francisco Ry. Co., 283 Mo. 1. c. 467.]

This same result seems to be generally reached in the majority of other jurisdictions. "The action for death, being an action for tort, is generally held to fall within the common-law rule that such actions do not survive the death of the party in whose favor the right of action existed." [17 C. J. 1232, sec. 78; 8 R. C. L. 754, sec. 43; Tiffany, Death by Wrongful Act (2 Ed.), p. 210, sec. 87; 17 Ann. Cas. 773, annotation to Gilkeson case.] There is, however, respectable authority to the contrary. [See Annotation following the Gilkeson case, 17 Ann. Cas. 774.] One result of such a survival might often be (where the deceased had no children) that no part of the amount recovered would go to anyone related to the deceased. (Where a husband or wife was the beneficiary their heirs would be their own kin.) It has even been held that the interest of a beneficiary in the damages is assignable. [Quin v. Moore, 15 N. Y. 432; see, also, Fritz v. Western Union Tel. Co. (Utah), 71 Pac. 209.] In view of the sound reason given in the Gilkeson case, against survival of the beneficiaries' cause of action, we feel that we should follow it and the other cases which have so long and uniformly ruled against such survival. Plaintiffs here are not, therefore barred from bringing this suit because the action given by the statute survived upon the death of their mother to her personal representative, even though State ex rel. Thomas v. Daues did disapprove one of the reasons given in the former cases for reaching that result.

We will, therefore, proceed to examine the authorities which defendants say hold, even if there be no survival of the plaintiffs' mother's action to her administrator, that bringing suit by plaintiffs' mother within six months, regardless of her death within the year after plaintiffs' father's death, prevents them from maintaining this suit although they commenced it within the one year statutory period of limitations. One of the earliest cases, Coover v. Moore, 31

Mo. 574, interpreting the rights of the beneficiaries named in the statute, held that where there were minor children the widow had no right to sue after six months. The court said:

"The general limitation of time is 'one year after the cause of action shall accrue.' The cause of action of minor children accrues, in case there be a husband or wife, six months after the death; in other cases it accrues at the death. The right of a wife accrues at the death of the husband, and generally she has one year within which to bring suit; if there be, however, minor children, their right of action accrues six months after the death, if the wife have then failed to sue; and the question is, has the wife then a right to sue concurrent with that of the minors? We think not; for only the one sum can be recovered, and, therefore, only one suit prosecuted; and the minors having undoubtedly the right, no such right can remain to the wife."

In Kennedy v. Burrier, 36 Mo. 128, this statement was modified. The argument was made that, since the court held in the Coover case that the cause of action of the minor children in case the wife survived accrued six months after the death, the children had a year from that time in which to bring suit, which would give them in all eighteen months after their father's death. The court, however, held otherwise, stating the nature of the rights of the widow and the minor children as follows:

"The cause of action clearly accrued at the death of Kennedy, and the statute commenced running from that time. The fact that the right to the damages, and consequent right to sue for them, at different times, is vested in different individuals, can make no difference as to the time the cause of action accrued.

"There is but one cause of action, and that accrues to the husband or wife under the statute, and, in default of his or her suing, it passes to the minor children; just as the right to sue on a promissory note passes from the intestate to the administrator. It is the same cause of action all the time. It accrued when the defendant's liability was complete, which in this case was at the death of Kennedy; and the statute necessarily commenced running at that time."

In McNamara v. Slavens, 76 Mo. 329, where the deceased left a widow and minor children the widow commenced suit within six months and later dismissed her suit. Thereafter, the minor children commenced suit. The court held they had no right to do so, saying:

"It is a cause of action created by the statute, and no one can sue unless he bring himself within its terms. It is not a joint right of action in the husband or wife and the children. The statute gives the surviving husband or wife six months within which to elect to appropriate the cause of action, the election to be made by the institution of a suit. If the surviving husband or wife sue within six

months, that is an exercise of the option given by the statute. He or she then has as absolute control of the cause of action as of any common law right of action he or she may have, and may compromise. releases or otherwise settle the matter in controversy with the defendant. By dismissing her suit the widow did not lose her right of action, nor did such dismissal operate to transfer it to the children, but at any time within the six months she might have instituted another suit.

"Nothing in the foregoing sections warrants any other construction. By the commencement of the suit by the mother, within six months after the death of the father, the right of the children to sue was forever taken away."

In Barker v. Hannibal, St. Joseph Railroad Co., 91 Mo. 86, 14 S. W. 280, the court held that, if there were no minor children, the widow could sue at any time within one year after the death of her husband, but the petition must state that fact to state a cause of action. [See, also, Chandler v. C. & A. Railroad Co., 251 Mo. 592, 158 S. W. 35.] In Packard v. Hannibal & St. Joseph Railroad Co., 181 Mo. 421, 80 S. W. 951, the father of plaintiffs, employed by the Rock Island Railroad, was killed. His widow brought suit within six months against that company and upon trial of that case failed to recover. There after, within the year from the date of their father's death, plaintiffs brought suit against the Hannibal & St. Joseph Railroad Company, alleging that their father had been killed by reason of its negligence. This court held that they could not maintain the suit. The court said:

"Mrs. Packard having brought her suit within the six months, the entire cause of action became hers absolutely and remained in her in her own right and not as next friend of her children. She had made the election required by the statute by the institution of her suit. If she had been nonsuited in her action brought against the Rock Island within the six months, we think there can be no doubt that at any time within the year after her husband's death she could have renewed the suit by a new action against the Rock Island or the Hannibal Company or both at her option. Having appropriated the right, she had absolute control of it. Her right of action was against all whose negligence caused the death of her husband. Having plenary control of the action she was at liberty to sue them all jointly, or as many as she saw fit. It is true, there could be but one satisfaction, but until satisfaction all the negligent parties were liable at her election. . . . The right of action is single and not concurrent in both widow and children, but in the widow first, and then, under certain conditions, in the children. . . .

"So say we in this case: the widow having appropriated the one single, indivisible cause of action given by the statute within six

months after her husband's death, her election forever cut off the plaintiffs, the children, from availing themselves of that right."

More recently, Huss v. Bohrer, 317 Mo. 204, 295 S. W. 95, where a widow brought suit within six months for the death of her husband but dismissed and refiled a new suit more than six months but within less than a year thereafter, this court held the trial court was wrong in sustaining a demurrer on the ground that the suit was not filed within six months after the death. This court summed the matter up as follows:

"A husband or wife, when there are no minor children, may sue at any time within a year. [Barker v. Railroad, 91 Mo. 86, 14 S. W. 280.] Likewise the minor children, if there be no husband or wife, have a year in which to commence an action. And, where there are both husband or wife and minor children, the time for bringing suit, so far as the defendant is concerned, is not for that reason cut down. It is still a year. But between husband or wife and the minor children, with respect to which shall be entitled to sue, the statute gives the former a preferential right, conditioned that he or she 'sue within six months after such death.' In the instant case the wife fully performed the condition; she did sue within six months after her husband's death. The bringing of the suit fully vested the cause of action in her to the exclusion of the minor children. Regardless of the subsequent disposition made of that suit, her right to the action was thereby irrevocably established and that of the children forever cut off."

The statement in these cases that a suit by the widow within six months is an appropriation of the cause of action which makes it hers absolutely and forever cuts off the rights of the children is what is relied upon by defendants to sustain their contention here. In all of these cases, however, the widow was still living, able to proceed with the action and, since she had the right to do so, therefore, of course, the children could not. The situation here is different. The one-year period of limitations had not expired; the widow could not do anything further to recover upon the cause of action because she was dead; not only her right was ended but no one else could enforce her right because it did not survive to her administrator. Should the minor children, who were still able to bring suit within the prescribed period of limitations, be prohibited from doing so under these circumstances? What these cases say, concerning appropriation by the widow, must be considered with reference to the particular situation involved.

These authorities do, however, establish the following principles applicable to cases where a man killed by the negligence of another leaves surviving him a widow or minor children or both:

First: The statute provides for but one cause of action which accrues at the time of a man's death to his wife and then passes to his minor children if she fails to sue within six months for any reason.

It would, therefore, pass to them if she died within six months without suing.

Second: Whether the widow or the children have the right to enforce this cause of action, it remains the same cause of action and passes from one beneficiary to another. They do not have a joint cause of action nor concurrent causes of action. It passes from the widow to the minor children as an intestate's action passes to his administrator. [Kennedy v. Burrier, supra.]

Third: When there are minor children, if the widow brings suit within six months that is an election by her to appropriate the cause of action. If there are no minor children she has the whole year in which to sue. Likewise if there is no widow the children do not have to wait six months to sue.

Fourth: When the widow makes such appropriation, she has absolute control of the action as long as she lives. She may settle it and thereby terminate it. She may dismiss it and start another suit at any time permitted by the limitation section.

Fifth: While as between the widow and minor children, the former is given a preferential right to sue, if exercised within six months, *as between the widow and minor children and the wrongdoer* the time to sue is not cut down, whether both widow and minor children survive or not and whatever may be their rights between themselves, but remains a year.

Section 3262 says that the penalty it provides *"may be sued for and recovered"* by those therein designated. Section 3264 says that damages "resulting from such death, to the surviving parties who may be entitled to sue." *may be sued for and recovered* by those designated in Section 3262. Section 3266 says that such suits "shall be commenced within one year after the cause of action shall accrue." Therefore these sections must be construed together. It is, of course, fundamental that where the language of a statute is plain and admits of but one meaning there is no room for construction. Defendants contend that such is the case here and that if the widow sues it is plain that the rights of the children are in all circumstances forever cut off. The statute does not say so, but that statement has been added by construction in situations where it was obviously correct; namely, where the widow had exercised her preferential right to enforce the action to *recover* the penalty or damages; and was still living, capable of doing so, and not barred by the Statute of Limitations. There was, of course, no reason, under such circumstances, for taking her rights away from her. It is obvious that none of these cases specifically cover the situation here, where the widow *has sued for* but has not *recovered* the penalty or damages, where because of her death nothing can ever be *recovered* by her or by anyone upon her suit or upon her right to sue, and where her *right to recover* has not been and never can be even considered. The statute evidently contemplates a suit in which the *right to recover* may be decided. It

undoubtedly must be the existence of the *right to recover* in some one else which cuts off the children's rights. If we hold that the children's rights to *recover* are forever cut off, by the mere commencement of a suit, although the only preferential *right to recover* on the cause of action and the party entitled to such right no longer exists, we would be giving effect to form rather than substance. We would also be cutting down the period of limitations *as between the wrongdoer and the widow and children* who suffered an actual loss from his wrongful act, and we would be forgetting the evident original purpose of the act (at least the compensatory section) to provide an action, for those legally entitled to and wrongfully deprived of the right of support from or services of a husband, wife, father or minor child, to *recover* their loss.

We do not think that the original statute put the widow and minor children in separate classes, as dependents and next of kin are now in separate classes. The statute really only provided for two classes, based upon different situations, but both providing only for those who suffered a loss of the support or services of the deceased.

First: Where a married person is killed, the beneficiaries were the surviving wife (or husband) and minor children with a preferential right to the wife, as between them, to enforce the single cause of action created.

Second: Where an unmarried minor is killed, the beneficiaries were the surviving parents with an equal right as between them.

When the fourth alternative was added, it provided for a third, not fourth, class of beneficiaries and situation, namely, where an unmarried mature person was killed (all other classes having been previously included), a suit for his next of kin. The original part of the statute does not say, as in the case of the amendment providing for an action for the benefit of the next of kin, that the minor children have the right to sue only if there be no widow. They are given their rights even though the widow does survive, but their rights may be cut off by the widow's election to exercise them in her own name, rather than to have them exercised in the childrens' names, which, as a practical matter, she being their only remaining parent and natural guardian, would usually be the case where the suit was brought in their names. The widow and minor children are therefore in the same class, both entitled to the enforcement of the cause of action created for the wrongful death of the husband and father, but with preferential rights during certain periods, as between themselves, as to which may enforce it. Even though the cause of action is the same, regardless of which is the plaintiff in the suit and even though both suffer an actual loss from the death, the measure of damages is different insofar as compensation is considered, because the nature of their loss is different. One reason for providing an election as to the plaintiff might be that under some circumstances the children (if very young for example) might recover the most,

while in others the widow might well be entitled to recover a larger amount. Under the English act, they would not only all be in the same class but in the same action in making up the total judgment the jury would apportion the amount of the loss of each. Under ours, someone must make the choice and take the chances. There can be no question, however, whether it is viewed historically or from the plain meaning of its language, that this part of the statute (providing for beneficiaries) was intended primarily to provide for all of the helpless dependents of a man killed by any of the wrongful acts described in these statutes. Where he left a widow surviving, this purpose would, in all human experience as to a mother's care for her children, almost as surely be accomplished if she received, in her own name, the amount of the penalty or damages as if it was received in theirs. If she sues, the jury is allowed to take into consideration the minor children to be cared for in fixing the damages. If she does not survive or does not act to collect it, the clear intention is that the right to do so should then pass to the minor children. If this action passes to them by her inactivity, why should it not also pass to them by her death? If the widow did not sue and after six months suit was brought for the minor children, if they died within the year should there be any doubt that the widow could then sue?

Considering the situation here in this light, it would seem that only by the most narrow, harsh, and technical construction of the provision, creating the rights of the widow and minor children, could we say that, upon the death of the widow entitled to the preferential right to sue in this class of beneficiaries, composed of the actual dependents entitled to be supported by the deceased under all legal rules and moral precepts, when those of that class remaining could still commence suit within the time the statute gives them to do so, the right of action itself has ceased to exist, although it is not yet even barred by the Statute of Limitations. This is the remedial section of these statutes. It does not call for such a construction, and to make it would destroy its plain purpose. If, when the widow dies, her right to proceed is ended, so that it cannot be exercised by her administrator, is there any logical reason why we cannot say her appropriation of the action is also ended, and that the right to bring the action passes (as it would have done after six months had she not sued, even though she survived their father and her failure to sue was due to her death prior to that time) to those the statute says could bring it if she did not, if they do so within the time the statute gives them to do so? There is then no suit by the widow and never can be for there is then no widow and no one who can enforce the preferential right given to her. The situation is exactly the same as where the widow "fails to sue within six months" and the rights of the parties should be the same. We do not think that the statute requires us to hold that the action, it creates but does not bar for one year, dies and passes out of existence with her death before the

end of the year, when its purpose, to provide for those who were actually, legally and morally dependent upon the deceased and who sustained an actual loss by this death, will be defeated by such a construction. Our conclusion is that, where both widow and minor children survive, if the widow sues within six months but dies within one year after her husband's death, then the minor children may still maintain a suit if they commence it within one year after their father's death.

The judgment is reversed and the cause remanded.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the Court en Banc. *Gantt, C. J., Atwood, Leedy* and *Hays, JJ.,* concur; *Frank, J.,* concurs in separate opinion in which *Gantt, C. J., Atwood, Leedy* and *Hays, JJ., concur; Ellison, J.,* dissents in separate opinion in which *Tipton, J.,* concurs.

FRANK, J. (concurring).—Action for alleged wrongful death of Archie C. Cummins occasioned by a collision between a motor bus on which he was riding as a passenger, and a street car operated by the Kansas City Public Service Company. The collision occurred on September 3, 1928, in Kansas City, Missouri, as a result of which Cummins died on that day and left surviving him his widow, Ada Jane Cummins, and three minor children. The widow brought suit on September 25, 1928, to recover for the alleged wrongful death of her husband. While the widow's suit was pending and before any trial or determination thereof, she died on August 1, 1929, whereupon her suit was, at the request of the opposite party, dismissed by the court. Thereafter on August 31, 1929, the minor children brought the instant action to recover for the alleged wrongful death of their father.

The action was brought under Section 3262, Revised Statutes 1929, which said section, among other things, provides the following:

"Whenever any person . . . shall die from any injury resulting or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing . . . any street, electric or terminal car . . . the corporation, individual or individuals in whose employ any such officer, agent, servant or employee . . . shall be at the time such injury is committed, . . . shall forfeit and pay as a penalty, for every such person . . . so dying, the sum of not less than two thousand dollars, and not exceeding ten thousand dollars, in the discretion of the jury, which may be sued for and recovered: First, by the husband or wife of the deceased; or, second, if there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of deceased; . . . or third, if such deceased be a minor and unmarried, . . . then by the father and mother, who may join in the suit, and each

shall have an equal interest in the judgment, or if either of them be dead, then by the survivor; or fourth, if there be no husband, wife, minor child or minor children, . . . or if the deceased be an unmarried minor and there be no father or mother, then in such case suit may be instituted and recovery had by the administrator or executor of deceased, and the amount recovered shall be distributed according to the laws of descent. . . .''

Section 3266, Revised Statutes 1929, provides that every action instituted by virtue of Section 3262 above quoted shall be commenced within one year after the cause of action shall accrue.

■ It appears from the dates above set out that the widow brought her suit within six months after the death of her husband, and thereafter died within one year after his death, without trial or determination of her suit. It also appears that the minor children brought their suit after the death of the mother, and within one year after the death of the father.

Defendants demurred to plaintiff's petition, claiming that when the surviving widow brought suit within six months after the death of her husband to recover for his alleged wrongful death, she appropriated the cause of action unto herself and thereby absolutely and forever cut off the right of the minor children to sue. The trial court sustained defendants' demurrer, and plaintiffs declining to further plead, judgment was rendered dismissing the cause and assessing the costs against plaintiffs. This appeal followed.

The sole issue in the case is a proper construction of Section 3262, Revised Statutes 1929. This section gives a right of action for wrongful death. There was no right of action for wrongful death at common law. Under the common law a right of action for personal injuries resulting in death died with the person injured. The statute in question was designed not only to punish the wrongdoer, but to remove the technical rule of the common law of harsh injustice, and in its stead give a right of action for wrongful death, for the benefit of the persons named in the statute. The statute is remedial, at least to the extent that it gives named beneficiaries a remedy against the party causing the wrongful death, where none existed at common law. Remedial statutes should be construed in the light of the prior common law, the mischief to be remedied, and the remedy provided, so as to suppress the mischief and advance the remedy. Speaking of this rule of construction in Shohoney v. Railroad, 231 Mo. 131, 157, 132 S. W. 1059, we said:

''It is a golden rule of judicial exposition to discern what the common law was, what was the mischief and defect for which the common law did not provide, what remedy the statute appointed to cure the disease of the commonwealth and what was the reason of the remedy so provided. When these things are discerned by the judge, it is but trite and venerable doctrine that his office is to so construe the new statute as to suppress the mischief, advance the remedy and

*'to suppress subtle inventions and evasions for continuance of the mischief, . . . and to add force and life to the cure and remedy according to the true intent of the makers of the act, pro bono publico.'* [Heydon's Case, 3 Coke, 7b.]"

■ It is apparent from a reading of the statute that the Legislature intended to penalize the party causing a wrongful death because the statute expressly so states. It provides that the wrongdoer *shall forfeit and pay a penalty* of not less than $2,000, and not exceeding $10,000 for every such person so dying. The next question is, who is entitled to recover the penalty? The statute provides that the penalty *may be sued for and recovered;* first, by the husband or wife of the deceased; or, second, if there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of such deceased. It is clear that the Legislature intended to give the husband or wife the first opportunity, not to merely sue for, but an opportunity to *sue for and recover* the penalty, because the statute expressly so states. It is likewise clear that if there be no surviving husband or wife the minor child or children may sue for the penalty at any time after the parent's death without waiting for the six months period to elapse, because the statute so provides. However, if there be a surviving husband or wife, the statute gives him or her the preferential right to *sue for and recover* the penalty, provided the suit therefor is brought within six months after the wrongful death. In the instant case, there was a surviving wife and she sued for the penalty within six months after her husband's death, but thereafter died within the one year period of limitation without a trial or determination of her suit.

■ Defendants contend that the mere filing of the suit by the wife within six months after the death of her husband, fully vested the cause of action in her to the exclusion of the minor children, and forever cut off the right of the children to sue.

The construction contended for would defeat the purpose of the statute. To hold in this case that the death of the widow before trial or determination of her case destroyed the cause of action and thereby exonerated defendants, would inject into the administration of this statutory proceedings the harsh and technical rules of the common law and defeat the expressed intention of the Legislature that the wrongdoer should forfeit and pay a penalty for the benefit of the persons named in the statute.

Evidently it was the intention of the Legislature that the parties named in the statute, under the conditions therein specified, might, not merely sue for, but *sue for and recover* the penalty, because the statute expressly so states. The provision of the statute is that the wrongdoer shall forfeit and pay a penalty *"which may be sued for and recovered,* first by the husband or wife." The expressed intention of the Legislature being that the penalty may be *sued for and recovered;* first, by the husband or wife, must it not logically follow

that when that body said, "if there be no husband or wife" the clear intention was that if there be no husband or wife to *sue for and recover* the penalty, then the minor child or children may sue for and recover it? In the instant case there was a wife to sue for the penalty and she did sue for it, but when she died before her case was tried or determined, then there was no wife to *sue for and recover* the penalty as contemplated by the statute. The clear intention of the Legislature as evidenced by the language of the statute is that where there is no husband or wife to *sue for and recover* the penalty, then the minor child or children may sue for and recover it. Such is the situation in this case, and for that reason the minor children of deceased are entitled to maintain this action, it having been brought within the one year period of limitation.

We have not overlooked that part of the statute which provides that if there be a husband or wife and he or she fails to sue within six months after the wrongful death, then the minor child or children may sue. As a matter of course, the Legislature intended something by this provision of the statute. We think that intention is clear. The limitation upon a cause of action for wrongful death is one year. As the husband or wife is given the first right to sue for and recover the penalty, were it not for the provision which, in effect, requires them to sue within six months after the death, they could, either purposely or carelessly, omit to sue until the one-year Statute of Limitations had run and thus defeat the right of the minor children. The clear and only intention evidenced by this provision of the statute is to protect the minor children against such a contingency.

There is no reported case in this State where the husband or wife brought a suit within six months after the wrongful death and thereafter died within the one year period of limitation without a trial or determination of the case, and for that reason the reported cases shed no light on the question presented in this case. However, there are many reported cases which do say, although unnecessary to a decision of the cases in which it is said, that where a husband or wife sues within six months after the wrongful death, he or she thereby appropriates the cause of action and forever cuts off the right of the minor children to sue.

For reasons heretofore stated, which we need not repeat here, the mere filing of a suit by the husband or wife within six months after the wrongful death, without more, does not forever cut off the right of the minor children to sue, and cases so holding are unsound and should be overruled to the extent of that holding.

Our conclusion is that the judgment should be reversed and cause remanded for trial on the merits. We therefore concur in the principal opinion written by Commissioner HYDE. *Gantt, C. J., Atwood, Hays* and *Leedy, JJ.,* concur; *Ellison, J.,* dissents in separate opinion in which *Tipton, J.,* concurs.

ELLISON, J. (concurring).—I respectfully dissent from the principal and concurring opinions. Under the Constitution it is the exclusive function of the legislative branch of the government to make laws; ours is only to construe them. ■ If a statute be ambiguous it is our duty to say what it means, but where it is plain we are without constitutional authority to vary, enlarge or reduce it. Even where legislation is defective or obscure we cannot, under the guise of construction, go beyond the legislative intent in supplying or amending it; and that intention must be gathered primarily from the language used in the act, not from what we surmise the Legislature may have intended to say or would have said if its attention had been directed to the question. The foregoing general propositions are well settled and in substance have been declared in the following recent cases decided by the court en banc. [State ex rel. American Asphalt Roof Corp. v. Trimble, 329 Mo. 495, 500, 44 S. W. (2d) 1103, 1105; State ex rel. Cobb v. Thompson, 319 Mo. 492, 496, 5 S. W. (2d) 57, 59; State ex rel. Koeln v. Southwestern Bell Tel. Co., 316 Mo. 1008, 1012, 292 S. W. 1037, 1038.]

In arriving at the meaning of a statute, the language thereof is to receive a common-sense construction, words being taken in their usual and ordinary sense. If the import of the act, so read, is not clear certain extrinsic aids to construction may be resorted to, such as a consideration of the prior state of the law and the legislative policy evidenced by related statutes. ■ Remedial legislation should be liberally construed and penal statutes strictly construed. [Rozelle v. Harmon, 103 Mo. 339, 343, 15 S. W. 432, 12 L. R. A. 187.] The legislative intent in the one case is to be taken as broad and in the other narrow. It is said in 21 Ruling Case Law, section 4, page 209: "The rule that penal laws are to be construed strictly is perhaps not much less old than construction itself." Such was the rule in Missouri when the statute involved in this case was enacted, and it is the same today. [Osagera v. Schaff, 293 Mo. 333, 344, 240 S. W. 124, 127.] Measured by any and all of these rules, I maintain the statute will not bear the construction put upon it by the principal and concurring opinions; and that they are in conflict with many prior decisions of this court.

The statute under construction is Section 3262, Revised Statutes 1929, which, so far as applicable to this cause, provides that whenever the death of a person shall be caused by the negligence of an employee of a street car company while operating a street car, the employer *"shall forfeit and pay as a penalty . . .* the sum of not less than two thousand dollars, and not exceeding ten thousand dollars, in the discretion of the jury, which may be *sued for and recovered:* First, by the husband or wife of the deceased; or, second. if there be no husband or wife, or he or she *fails to sue within six months* after such death, then by the minor child or children of the deceased." (Italics mine.)

A third subdivision of the section provides that when the person killed is an unmarried minor the father and mother jointly may maintain the action. And a fourth subdivision says if there be no husband, wife or minor child (or surviving parent, where the deceased is an unmarried minor) the suit may be instituted by the administrator or executor of the deceased for the benefit of the next of kin. The statute was first enacted in 1855, Revised Statutes 1855, section 2, page 647. The part quoted above appeared in the original enactment except that it then provided the employer should "forfeit and pay . . . the sum of five thousand dollars." This was changed in 1905 by amendment, Laws 1905, page 135, the words "as a penalty" being inserted after the words "forfeit and pay" and the words "not less than two thousand dollars and not exceeding ten thousand dollars, in the discretion of the jury" being substituted for the flat $5000 penalty theretofore fixed. The provision authorizing the administrator to sue, also was added by that amendment.

The person killed in this case was Archie C. Cummins. He left a widow and minor children. The widow did sue within six months for his wrongful death, as the statute requires—but she died while the suit was pending and before it had been tried. Her death occurred about eleven months after the demise of her husband. Section 3266, Revised Statutes 1929, allows one year from the date of the wrongful death for the commencement of actions under Section 3262. There therefore remained about one month of the one year's period of limitation when the widow died. Within that month the minor children brought the instant suit on the same cause of action—the wrongful death of Archie Cummins. The circuit court sustained a demurrer to the petition.

The principal and concurring opinions reverse that ruling and remand the cause, holding that although the widow complied with the sole condition expressed in the statute—by bringing her suit within six months—nevertheless the cause of action was not hers absolutely. To the contrary, they say that on the death of the widow within the year without a determination of her suit, the right to sue passed on to the children; and that they can maintain the present action since they brought it before the expiration of the period of limitation. The reasoning of the two opinions is that since the statute says the employer *shall forfeit and pay a penalty* which shall be sued for *and recovered* by the beneficiaries therein named, therefore we ought to conclude the Legislature intended the employer should not escape the punishment imposed for his servant's wrongdoing, and that the beneficiaries nominated in the statute should not only sue but should also recover the penalty. Having deduced this legislative intent, the two opinions construe the statute to mean that if a beneficiary (in this case the widow) bring suit but die without recovering, the cause of action passes on to the next beneficiary in the order named in the statute (in this case the minor children)

unless or until the cause of action is exhausted by the one-year Statute of Limitations. On this theory if the widow should duly bring suit and die and there were no minor children or they should sue and die, all within the year, the administrator could still sue for the benefit of the next of kin.

This construction of the statute *concedes it is penal.* The reasoning starts with the premise that the Legislature intended the wrongdoer should not escape punishment. It is also at variance with the terms of the statute. For the section authorizes the minor children to sue only in two instances: (1) where there is no surviving husband or wife; (2) or where that surviving parent fails "to sue" (not sue and recover) within six months. And as to the executor or administrator, the express statutory condition is that he can sue only when there are no husband, wife or minor children. But both opinions justify their broad interpretation on the ground that the statute is *remedial* and therefore open to liberal construction. In other words to fasten liability on the employer under a penal statute they say it is remedial and open to a liberal construction. The principal opinion of HYDE, C., says one of the primary objects of the statute is to furnish *compensation* to the dependents of the deceased. The concurring opinion says it affords a *remedy* for wrongful death, which did not exist at common law.

Now when is a statute penal? And what is a "remedy" in the legal sense? It is said in 59 Corpus Juris, section 658, page 1111: "The true test in determining whether a statute is penal is whether the penalty is imposed for the punishment of a wrong to the public, or for the redress of an injury to the individual." [See, also, 25 R. C. L., sec. 303, p. 1086.] A remedy is the legal means employed to enforce a right or redress an injury. [Words & Phrases, 1st, 2nd, 3rd and 4th Series.] It involves the idea of compensation, as the principal opinion recognizes. Forgetting for a minute that Section 3262 has always said the employer shall "forfeit and pay" the sum named therein, and that by the Amendment of 1905 the emphatic words "as a penalty" were added, is the statute compensatory?

For the first fifty years the amount exacted was a flat sum of $5000 —no more no less—regardless of whether the deceased supported his family or was a charge upon them. Evidence of the actual pecuniary loss of the plaintiff relatives and had no place in the case. [Weller v. C., M. & St. P. Ry. Co., 120 Mo. 635, 654, 23 S. W. 1061, 1065; Boyd v. Mo. Pac. Ry. Co., 236 Mo. 54, 88, 139 S. W. 561, 570.] In 1905 the penalty was changed from $5000 to a sum ranging between a minimum of $2000 and a maximum of $10,000, in the discretion of the jury; and the same amendment permitted the administrator to sue for the benefit of the next of kin in default of the other relatives named in the statute. As the section has since stood it is held evidence of the actual pecuniary loss may be considered by the jury in assessing the penalty just as the punishment in criminal cases may

be varied according to the amount of injury inflicted by the defendant; but the jury are not bound by that evidence or required to fix the penalty on that basis. They must award $2000 or nothing; they can give the dependent wife or minor children the minimum of $2000 when their actual loss is much greater; or they can allow remote kin suing through the administrator the maximum of $10,000 though they have suffered no loss whatever. As a necessary result of the holding of the principal opinion they could do that even in a case where the deceased had left a wife and minor children who would be his heirs—thus excluding remotor kin under the laws of descent and distribution—if the wife and children had died before the expiration of the one year period of limitation and the administrator sued within that time.

If the statute Section 3262, were like Lord Campbell's Act (much of which is set out in the principal opinion) and gave an action for *damages* "proportioned to the injury resulting from such death," there would be reason for saying it was compensatory and therefore remedial. As a matter of fact, when the Legislature passed what is now Section 3262, they adopted two companion sections in the same act (R. S. 1855, secs. 3 and 4, p. 648, now Secs. 3263 and 3264, R. S. 1929) authorizing a recovery for wrongful death, which were modeled after Lord Campbell's Act and which did put the recovery on a damage or compensatory basis. But in that respect they differ from Section 3262, which is penal. [Hawkins v. Mo. Pac. Ry. Co., 182 Mo. App. 323, 336, 170 S. W. 459, 464.] In other words, as regards the causes of action created by Section 3262, the Legislature was unwilling to limit the recovery to damages or compensation, so they imposed a flat penalty of $5000, later changing it to a sum ranging between $2000 and $10,000 which must be paid in the discretion of the jury whether pecuniary loss had been suffered or not.

Not only is the holding of the principal and concurring opinions that the statute is remedial at variance with the terms thereof and the provisions of the companion sections just referred to. It is in conflict with practically all the decisions of this court on the point for the last thirteen years and more. The very constitutionality of the statute depends upon the fact that it is penal and enacted in the exercise of the police power. [Humes v. Mo. Pac. Ry. Co., 82 Mo. 221, 228; Carroll v. Mo. Pac. Ry. Co., 88 Mo. 239, 246; Casey v. St. L. Transit Co., 166 Mo. App. 235, 250, 91 S. W. 419, 424; Boyd v. Mo. Pac. Ry. Co., 236 Mo. l. c. 86, 139 S. W. l. c. 570.]

More to the point, it has been expressly held penal in a long line of cases. Five years after the Amendment of 1905 the statute was before the court in Young v. St. L. I. M. & S. Ry. Co., 227 Mo. 307, 317, 127 S. W. 19, 20. It was held "the words 'as a penalty' inserted by the amendment add nothing to the meaning or effect of the section; we have always held it a penal statute." The next year, 1911, the case of Boyd v. Mo. Pac. Ry. Co., 236 Mo. l. c. 83, 139 S. W. l. c. 568,

called it "remedio-penal." When this Boyd case on a second appeal came to the court en banc in 249 Mo. 110, 120, 155 S. W. 13, 14, the court said that while earlier decisions had announced the statute possessed compensatory features, yet "the penal nature of the statute as it existed prior to 1905 has been quite uniformly held to overshadow its compensatory feature;" the first Boyd case was overruled; and the statute was held penal as to the minimum of $2000, and compensatory between that sum and the maximum of $10,000.

In 1920 a case came to the court en banc wherein the suit was brought by the administrator of a deceased bachelor who had no dependents. [Grier v. K. C., C. C. & St. J. Ry. Co., 286 Mo. 523, 228 S. W. 454.] The second Boyd case, supra, was overruled and it was held the statute is penal throughout its whole range, and that the administrator could recover the maximum of $10,000 without any proof of pecuniary loss. In so ruling the court said it was manifest "that the Legislature intended to make the entire recovery primarily a punishment for causing death by negligence, unskillfulness, or criminal intent, whatever incidental or secondary purpose it might at the same time subserve;" and that "damages or compensation is nowhere hinted at."

The opinion in this Grier case, by RAGLAND, J., then commissioner, had the full concurrence of only two judges, WALKER, C. J., and D. E. BLAIR, J., with J. T. BLAIR, and ELDER, JJ., concurring in the result, and WOODSON, J., absent. But on the essential point that the statute is penal and not compensatory the case has ever since been consistently followed in more than a dozen decisions. Thus, shortly afterward in Lackey v. United Rys. Co., 288 Mo. 120, 144, 231 S. W. 956, 962, decided by Division Two, it was said: "In the well-considered case of (citing the Grier case) the Court en Banc at the present term held that the section is penal as to the entire amount recoverable, and allowed a verdict under the section for $10,000 to stand, though there was no pleading or proof of the pecuniary loss." And in the closely following case of Midway Bank & Trust Co. v. Davis, 288 Mo. 563, 586, 233 S. W. 406, 413, the court en banc said the "statute is purely penal, and is in no sense or degree compensatory, as was held in" the Grier case. Likewise in Treadway v. United Rys. Co., 300 Mo. 156, 176, 253 S. W. 1037, 1042, Division One said of the statute: "The sum recoverable thereunder is *a penalty*. While it may be in lieu of compensation and may incidentally afford the same relief (citing case), it is, notwithstanding, unqualifiedly penalty and is to be assessed as penalty," citing the Grier case. In this Treadway case an instruction which told the jury if they found for the plaintiff they should assess his *damages* at such sum as would *compensate* him for injuries resulting to him from the wrongful death, was held reversible error. In State ex rel. Thomas v. Daues, 314 Mo. 13, 31, 283 S. W. 51, 56, 45 A. L. R. 1466, a leading case, the court en banc declared that an action under Section 3262 "is a purely statutory

action for a penalty.'' And so we might go on citing numerous other cases, but we shall refer to only one more.

In Herrell v. St. L.-S. F. Ry. Co., 324 Mo. 38, 23 S. W. (2d) 102, decided by the court en banc in 1929, the parents of an unmarried minor sued under the statute for his wrongful death. One of the pleaded defenses to the action was that the father of the deceased had been guilty of contributory negligence. There was no contention that the plaintiff mother had been guilty of such contributory negligence. This court held that where both parents sue for the death, the contributory negligence of. only one of them is no defense *because* the statute is *penal,* and a penalty cannot be split. In the course of its discussion the court said: ''In an action under section (3262) no question of apportioning damages can arise: such an action is not for damages, but for penalty—assessed as a punishment for the commission of a wrongful act which results in death. In some instances the penalty is recoverable by persons who presumptively sustained pecuniary loss through the death; in others it is not. When it goes to persons sustaining loss, its serving in a measure as compensation—damages—is purely incidental. The recovery in its entirety is penalty: not damages,'' citing the Grier case.

In the face of the foregoing decisions and the terms of the statute itself, the principal opinion argues that even if the section be penal, it is only so in part, i. e., with respect to its liability and penalty provisions; and that the part designating the persons entitled to the penalty is remedial and should be liberally construed. On this point Casey v. St. L. Transit Co., 116 Mo. App. 1. c. 249, 91 S. W. 1. c. 424, and the Grier case, 286 Mo. 1. c. 542, 228 S. W. 1. c. 459, are cited.

The Casey case does say the same statute sometimes may be penal for some purposes and remedial for others, and may be liberally construed as to the latter. It is even stated that particular statute here under consideration, Section 3262, is remedial as well as highly penal, and that such portions of it as confer a remedy are to be liberally construed. But the opinion goes on to *hold the entire statute* penal as imposing a forfeiture and says ''it would almost seem to overturn the constitutional guaranty of right of trial by jury . . . except for the police power of the State underlying it.'' Then the opinion says ''the only exception which we have been able to find to this rule requiring strict construction of statutes which are in their nature penal, is in the case of a statute which provides for more than actual compensation, such as double or treble recovery for the commission of some wrong'' (as in trespass) where the plaintiff has an actual, common-law right to recover compensatory damages, and the cause of action is not a new one *created* by the statute—in other words, where the damages are simply ''engrafted on a common-law recovery by the statute in the nature of a penalty.''

The Grier case likewise says ''statutes which provide a penalty recoverable by the party aggrieved are remedial as well as penal;''

and that two diverse principles therefore have some application: that of requiring "strict construction on account of the penalty, and that of liberal construction to prevent the mischief and advance the remedy." The decision goes on to say: "Applying the rule to the statute under consideration, the provisions giving the penalty, that is, creating the liability, should be strictly construed, while those relating to the remedy should be liberally construed." But as will be remembered this Grier case had the full concurrence of only two judges out of six, and of two judges in the result. And the ruling on this point was *obiter* anyway because the decision was expressly put on the ground that the statute by its own plain terms was penal. We cannot find it has ever been followed since on this point. On the contrary, in Betz v. K. C. So. Ry. Co., 314 Mo. 390, 412, 284 S. W. 455, 457, it was held the statute calls for neither a strict nor a liberal construction because its language is clear and unambiguous, speaking the legislative intent without the aid of auxiliary rules of construction, citing the Grier case.

Neither the Casey decision nor the Grier case is authority for the proposition laid down in the principal opinion. But aside from that, as a matter of reason how can the remedy (?) be enlarged without a corresponding enlargement of the liability? To say the liability will be restrictively enforced but that a liberal policy will be followed in determining what beneficiaries can enforce that liability, involves the plainest contradiction. As was said in McGinnis v. Mo. Car & Foundry Co., 174 Mo. 225, 232; 73 S. W. 586, 588, 97 Am. St. Rep. 553, where the suit was based on the wrongful death statute of Illinois: "When . . . a statute creates a liability and prescribes the person who shall have the right to enforce it, the two parts of the statute are component parts of the whole, and both are necessary to constitute the whole, and it must be done exactly in the manner and by the persons or agencies that the statute prescribes. There can be no equivalent or other means employed."

Instead of the law's being that the part of the statute "designating the persons entitled to the penalty" should be liberally construed, the rule has always been to the contrary since the statute was first enacted in 1855. In the early case of Coover v. Moore & Walker, 31 Mo. 574, 576, it was said: "There being thus no general right of recovery open to all persons representing the estate of the deceased or interested in his life, only such persons can recover in such time and in such manner as is set forth in the statute." And in Barker v. H. & St. J. Ry. Co., 91 Mo. 86, 94, 14 S. W. 280, 282: "In statutory actions of this sort, the party suing must bring himself strictly within the statutory requirements, necessary to confer the right, and this must appear in his petition; otherwise, it shows no cause of action." These decisions have been followed without deviation on down to the present time, though in some instances a great hardship was worked upon the plaintiff. [See Oates v. Union Pac.

Ry. Co., 104 Mo. 514, 518, 16 S. W. 487, 488; Packard v. H. & St. J: Railway Co., 181 Mo. 421, 427, 80 S. W. 951, 953; Clark v. K. C. St. L. & C. Railroad Co., 219 Mo. 524, 538, 118 S. W. 40, 45; Chandler v. C. & A. Railroad Co., 251 Mo. 592, 600, 158 S. W. 35, 37; Freie v. St. L.-S. F. Ry. Co., 283 Mo. 457, 463, 222 S. W. 824, 825, 13 A. L. R. 204; Longan v. K. C. Rys. Co., 299 Mo. 561, 570, 253 S. W. 758, 761; Hicks v. Simonsen, 307 Mo. 307, 324, 270 S. W. 318, 323; Betz v. K. C. So. Ry. Co., 314 Mo. 1. c. 398, 284 S. W. 1. c. 457; Heath v. Salisbury Home Tel. Co., 326 Mo. 875, 884, 33 S. W. (2d) 118, 122; Rositzky v. Rositzky, 329 Mo. 662, 669, 46 S. W. (2d) 591, 594.]

Without further discussion of these important but collateral questions, the remaining fact to be considered is that the principal and concurring opinions are in conflict with a number of decisions of this court construing and declaring the meaning of the precise part of the statute here involved. The statute says the minor children may sue for and recover the penalty if the widow *fails to sue within six months.* The widow in this instance did sue within six months, but the two opinions hold this did not operate as an exclusive appropriation of the cause of action by her; that the statute means she must not only sue, but must *recover* or at least exhaust the cause of action as against subsequent beneficiaries by retaining control over it for the full period of limitation; and that if she dies before the year has run the right to sue within that time passes on to the minor children although no such permissive condition is set out in the statute.

What do the cases say on that point? (Italics in quotations are ours.) In 1862, seven years after the first enactment of the statute, it was held in Coover v. Moore & Walker, 31 Mo. 1. c. 576, that the right of the minor children to sue does not *accrue* if the widow has brought suit within six months. In Kennedy v. Burrier, 36 Mo. 128, this court said: ''There is but one cause of action, and that accrues to the husband or wife under the statute, and, *in default of his or her suing*, it passes to the minor children.'' In McNamara v. Slavens, 76 Mo. 329, 331, the widow sued within six months after the death of her husband, but on a trial voluntarily dismissed her case after the evidence was in on both sides, and thereafter commenced no other action. The minor children thereupon brought the suit in judgment, apparently within the year. This court said:

''It is a cause of action created by the statute, and no one can sue unless he bring himself within its terms. It is not a joint right of action in the husband or wife and the children. The statute gives the surviving husband or wife six months within which to elect to appropriate the cause of action, the election to be made *by the institution of a suit.* If the surviving husband or wife sue within six months, that is an exercise of the option given by the statute. He or she then has absolute control of the cause of action *as of any common law right of action* he or she may have, and may compromise, release or other-

wise settle the matter in controversy with the defendant. By dismissing her suit the widow did not lose her right of action, nor did such dismissal operate to transfer it to the children, but at any time within the six months she might have instituted another suit. Nothing in the foregoing section warrants any other construction. By the commencement of the suit by the mother, within six months after the death of the father, the right of the children to sue was *forever taken away.*"

And immediately following the above the court further said this, which is exactly in point on the question in the instant case:

"Section (3262) does not authorize the children to sue if the father or mother fail to sue and recover. It declares that the forfeiture may be sued for and recovered by the children if the father or mother fail to sue within six months. Their right to maintain the action depends upon the failure of the father or mother *to sue,* not upon his or her failure *to sue and recover.*"

In Packard v. H. & St. J. Railroad Co., 181 Mo. l. c. 429, 80 S. W. l. c. 953, decided in 1904, the court said:

"Mrs. Packard having brought her suit within the six months, the entire cause of action became hers *absolutely* and remained *in her in her own right and not as next friend of her children.* She had made the election required by the statute *by the institution of her suit.* . . . Having appropriated the right, she had absolute control over it. . . . The right of action is single and not concurrent in both widow and children, but in the widow first, and then under certain conditions in the children. . . . We think that by bringing her suit within six months Mrs. Packard clearly evinced her intention to appropriate the cause of action, whether successful or unsuccessful, and thereby cut off the right of the children to sue."

To the same effect are: Barker v. H. & St. J. Railroad Co., 91 Mo. 86, 14 S. W. 280; Huss v. Bohrer, 317 Mo. 204, 206, 295 S. W. 95; Anderson v. Asphalt Distributing Co. (Mo.), 55 S. W. (2d) 688, 692. The two principal opinions attempt to distinguish all these cases by saying their facts were different—that none of them dealt with a situation where the surviving husband or wife had *died pendente lite.* The concurring opinion further says it was unnecessary for them to hold the bringing of a suit by the surviving husband or wife operated as a permanent and exclusive appropriation of the cause of action. But this unbroken line of decisions cannot thus summarily be brushed aside. All of them were declaring what the statute meant, and then applying that construction to their facts. The question was who *owned* the cause of action. They held the statute vested the exclusive title in the surviving parent if he or she sued within six months, and forever cut off the children. In the McNamara case the widow had sued within six months and thereafter *abandoned* her suit. In the Packard case she had sued the wrong party. Obviously the court was required in both cases to determine

whether the minor children had any claim to the cause of action after the parent had complied with the statutory condition by suing within six months.

Of course, where the action is being prosecuted by two or more beneficiaries under the statute for their *joint* benefit and one of them dies, the action does not abate as to the other plaintiffs. At least it was so held in a case where the father and mother were suing for the wrongful death of their minor child, and the mother died while the suit was pending. [Senn v. So. Ry. Co., 124 Mo. 621, 28 S. W. 66.] Very likely that would be true if under our statute the widow prosecuted the action for the joint benefit of herself and the minor children (as is true in some states) and she should die *pendente lite*. But our statute says *she* may sue and *recover*. The intransitive verb "recover" as used in law means "to obtain a final judgment in one's favor," Webster's New International Dictionary; and as shown in the two preceding paragraphs, it has been held time and again the widow and minor children have no joint interest in the action. It is either hers or theirs depending on whether she sues within six months.

And as to the right of the administrator or executor to sue. We have already pointed out the necessary result of the reasoning of the principal and concurring opinions is that if a widow should duly sue and die and there were no minor children or they should sue and die, all within the period of limitation, the administrator or executor still could bring suit if he did so within the year. This point, likewise, was decided the other way in Betz v. K. C. So. Ry. Co., 314 Mo. 390, 284 S. W. 464, and O'Donnell v. Wells, 323 Mo. 1170, 1174, 21 S. W. (2d) 762, 764. In the Betz case the wife and husband were struck and fatally injured by a train, the wife dying first and the husband three hours later, leaving no minor children. The administrator of the wife sued for her wrongful death. It was held he could not recover because under the statute his right to sue was contingent on the wife's leaving no widower or minor children surviving her, as the statute explicitly says.

The principal and concurring opinions say a construction of the statute which would deny the minor children the right to sue after the death of the surviving parent with a suit pending, would be *harsh*. As pointed out in Rositzky v. Rositzky, 329 Mo. 1. c. 668, 46 S. W. (2d) 1. c. 593, the charge has been made in some cases from other states that the common law was "barbarous." In one analogous case in Missouri it was argued that if the Legislature intended to cut off an action for wrongful death they were "monsters of injustice." [Strottman v. St. L., I. M. & S. Ry. Co., 211 Mo. 227, 300, 109 S. W. 769, 791.] But as the Rositzky case says, whatever may be thought of the common law, it is still our law except where the statute has changed it. And as to the charge of harshness. If Section 3262 were compensatory and the beneficiaries were limited to

their loss there would be merit in it. But it is a penal statute which gives the beneficiaries the right to recover the full $10,000 as a punishment, without proving any loss, and which also permits a joint beneficiary to recover in spite of his own contributory negligence. May it not fairly be said to be harsh to adopt a *liberal construction* in imposing a liability of that character? And further concerning the hardship on the minor children. According to the plaintiff's own construction the statute only gives them the second six months of the year in which to sue, if there be a surviving parent who outlives the first six months even without suing. In this case if the widow had lived one month longer the children would have been barred. The very terms of the statute and the fact that a one-year period of limitation is imposed, show the Legislature regarded it as *sui generis* and as creating a cause of action which should be restrictively enforced.

Finally, and as stated in the beginning of this opinion, one of the permissible extrinsic aids to the construction of a statute is a consideration of the prior state of the law. It has been pointed out that the general rule in force in Missouri when Section 3262 was first enacted in 1855 was that penal statutes should be strictly construed. Between that time and 1905, when the statute was amended, an unbroken line of decisions had held that where the widow sued within six months she *appropriated* the cause of action and it became exclusively hers like any common-law action she might own. One of these decisions was the Packard case decided in 1904, just a year before the amendment. And yet no change was made in that part of the statute, nor has there been in the thirty years (nearly) since.

Furthermore, it was the legislative understanding at the time of the passage of the statute in 1855 that tort actions should abate on the death of the plaintiff. Under the common law the rule was *actio personalis moritur cum persona.* Prior to the first enactment of Section 3262 the rule had been guardedly relaxed by statute only to the extent that for tortious wrongs done to the *property rights or interests* of another, the action would survive the death of either the claimant or the tort-feasor. [R. S. 1835, secs. 24, 25, p. 48; Secs. 98, 99, R. S. Mo. 1929.] The present Section 3262 was passed twenty years later creating a cause of action for wrongful death which did not exist at all at common law, without the insertion of any provision for a survival or transmission between statutory beneficiaries. Not until *1907* did a cause of action for tortious wrongs to the person or health of another survive his death (Laws 1907, p. 252, Sec. 3280, R. S. 1929). And even this statute only permits a survival where a *suit has been instituted* before the death of the injured party and the tort-feasor. [Shoop v. Martin, 321 Mo. 811, 12 S. W. (2d) 450.] To this day if tortious injuries be inflicted upon a person and he dies before bringing suit, the action abates. Certainly the history of our law on the subject shows it is the legislative understanding and inten-

tion that tort actions do not survive except where it is expressly so provided by statute. With respect to wrongful death statutes like ours, as between primary and secondary beneficiaries, the weight of authority elsewhere is to that effect. [13 A. L. R. 237, note.]

Our statute only says the minor children may sue when: (1) there is no surviving parent; (2) or that parent fails to sue within six months. The principal and concurring opinions interpolate a *third* condition; that the minor children may sue even where the surviving parent *has* sued within six months, if that parent die *pendente lite* within the one year's period of limitation. The statute further provides an executor or administrator may sue only when no husband, wife, minor child or children survive the deceased. The necessary effect of the reasoning of the principal opinions is that the executor or administrator may sue even though a husband or wife and minor child or children do survive the deceased, provided they successively sue and die within the period of limitation. I respectfully submit that construction does violence to the statute, measured by its own terms, by other statutes *in pari materia,* and by its historical setting. It also necessarily overrules a large number of former decisions of this court. *Tipton, J.,* concurs.